354 F.3d 857
 MATTEL, INC., a Delaware corporation, Plaintiff-Appellant,
v.
GREINER AND HAUSSER GMBH, a German business entity; R. Hausser, an individual; M. — L. Hausser, an individual; Does 1 Thru 10, inclusive, Defendants-Appellees.
 No. 02-56272.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 13, 2003.
 Filed December 22, 2003.
 
 Ronald L. Olson (argued), Michael R. Doyen, Munger, Tolles & Olson, LLP, Los Angeles, CA, Andrian Mary Prueta, Michael T. Zeller, Steven Vaughan, Quinn Emanuel Urquhart Oliver & Hedges, LLP, Los Angeles, CA, for the plaintiff-appellant.
 Joseph M. Burton (argued), Daniel J. Herling, Duane Morris LLP, San Francisco, CA, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California Nora M. Manella, District Judge, Presiding. D.C. No. CV-02-00322-NMM.
 Before Robert BOOCHEVER, TASHIMA, and CLIFTON, Circuit Judges.
 OPINION
 CLIFTON, Circuit Judge.
 
 
 1
 Barbie, the ubiquitous doll produced by Mattel, has been a regular visitor to our court.[1] This time she brings with her an issue of personal jurisdiction — not over her, but over a German toy company which has questioned her ancestry by asserting that Barbie was a copy of its doll and that Mattel had infringed its patent and other intellectual property rights. The German company, Greiner & Hausser GmbH ("G&H"), previously asserted claims to that effect in a lawsuit filed in federal district court in Los Angeles in 1961, more than 40 years ago. That lawsuit was resolved by a dismissal with prejudice of those and other claims. Today, Barbie generates over $2 billion in wholesale revenues each year, a sum which helps to explain why Barbie comes to visit us so frequently. It presumably also helps to explain why a lawsuit was filed in Germany in May 2001 by G&H, claiming that it had been defrauded by Mattel when it entered into a set of related agreements with Mattel in 1964, shortly after the dismissal of the previous California litigation, and seeking damages in the form of a royalty on every Barbie doll sold since that time.
 
 
 2
 Mattel responded by filing its own lawsuit in Los Angeles federal court against G&H and two related individuals, seeking to "enforce" the resolution of the initial lawsuit, filed in that court and dismissed more than 40 years ago. Among other things, Mattel sought to enjoin G&H's prosecution of the lawsuit it filed in Germany. Mattel sought a preliminary injunction, but that motion was denied by the district court. Soon thereafter, Mattel's entire lawsuit was dismissed by the district court, principally because the court concluded that the German action did not attempt to relitigate matters resolved in the 1961 California lawsuit. The district court dismissed Mattel's action on grounds of (1) lack of personal jurisdiction over the defendants, (2) improper venue, (3) forum non conveniens, and (4) the impropriety of using the Declaratory Judgment Act, 28 U.S.C. § 2201, to adjudicate issues that Mattel might assert as affirmative defenses in the German action. Mattel appeals that dismissal and also the denial of its motion for preliminary injunction.
 
 
 3
 We affirm the denial of the preliminary injunction. We disagree with the district court's determination that it lacked personal jurisdiction over the defendants, however. We conclude that the subject matter of Mattel's current lawsuit — which concerns and is essentially defined by the claims currently asserted by G&H in Germany — is sufficiently related to the action filed in California by G&H in 1961 to support personal jurisdiction over G&H in the current case, at least at this stage of the proceedings. As a result, we reverse the order of dismissal entered by the district court and remand the case for further proceedings.
 
 I. BACKGROUND
 
 4
 At the center of this case is the question of whether Mattel, when it created the Barbie doll, unfairly copied a doll produced by G&H known as the "Bild-Lilli" doll.[2] G&H's Lilli doll was based on a character by that name featured in a cartoon series which first appeared in the German newspaper Bild-Zeitung in the early 1950s. G&H maintains that it was approached by the newspaper for the purpose of manufacturing the Bild-Lilli doll, which was introduced to the marketplace in 1955. G&H describes that original Bild-Lilli doll as being characterized by movable arms and legs, with a head that could be turned to the side. G&H alleges that Ruth Handler, a co-founder of Mattel, discovered the Bild-Lilli doll in Switzerland during a European trip in 1956, and that Mattel subsequently developed a similar doll, called "Barbie," at Ms. Handler's direction.
 
 
 5
 Mattel describes the Barbie doll as possibly the most famous toy in history. It was phenomenally successful from the moment of its introduction in 1959, selling over three hundred thousand units that year, three million by 1961, and more than one billion to date. Today, Barbie products are sold in 150 countries, with annual world-wide wholesale revenues in excess of $2 billion.
 
 
 6
 In 1960, Rolf Hausser, then the managing director of G&H, received a U.S. patent for the "doll hip joint" employed in G&H's Bild-Lilli doll. That same year, G&H exclusively licensed its rights in the doll in the United States, Canada, Hong Kong, and Great Britain for ten years to Louis Marx & Co., a then-large toy manufacturer based in New York.
 
 
 7
 In 1961, G&H and Marx brought suit against Mattel in the U.S. District Court for the Southern District of California, Central Division.[3] The initial claim was for Mattel's alleged infringement of G&H's patent for the hip joint of its Bild-Lilli doll, which G&H asserted was also a feature of Mattel's Barbie. The plaintiffs sought injunctive relief, an accounting for damages and profits resulting from the alleged infringement, treble damages, and other relief.
 
 
 8
 Mattel filed an answer denying the infringement, averring that the patent was invalid. In addition, Mattel filed a counterclaim in which it sought a declaratory judgment that the patent was invalid or, if valid, was not infringed by Mattel. Mattel's counterclaim also asserted a claim for unfair competition relating to G&H's assertions of an exclusive right to a structure of doll beyond the scope of its patent, and an associated "campaign and harassment of [Mattel's] customers and potential customers."
 
 
 9
 G&H and Marx responded by denying the counterclaims and filing an unfair competition counterclaim of their own. They alleged that Barbie was "a direct take-off and copy of" G&H's Bild-Lilli, and that Mattel falsely and misleadingly represented itself as having originated the design.
 
 
 10
 After the California lawsuit had been pending for over a year, the parties filed with the district court a "Stipulation of Dismissal" on March 4, 1963. That stipulation, which was approved ("so ordered") by the court, provided that all claims were "dismissed with prejudice" (emphasis added). The stipulation explicitly referenced the "Complaint and Counterclaims" filed by G&H and Marx.
 
 
 11
 According to Mattel, the 1963 dismissal of these claims and counterclaims forms the basis for its current action against G&H. Mattel asserts in its first amended complaint that "Defendants are precluded by the doctrines of res judicata and collateral estoppel from seeking to relitigate those allegations yet again and are barred from otherwise asserting that Mattel has infringed any protectible or enforceable interests in those dolls."
 
 
 12
 In 1964, the year following the dismissal of the California action, Mattel and G&H entered into several agreements relating to Barbie and Bild-Lilli. Mattel purchased G&H's Bild-Lilli copyright and its German and U.S. patent rights for three lump-sum payments totaling 85,000 deutschemarks (worth at that time approximately $21,600). In exchange for an additional payment of 15,000 deutschemarks ($3,800), the agreements also provided that upon the expiration of Marx's license in 1970, its marketing territories would transfer to Mattel. Mattel agreed not to use the names "Bild-Lilli" or "Lilli," and G&H agreed not to produce any dolls similar to Barbie or Bild-Lilli or to produce or sell any doll with the names "Bild-Lilli," "Lilli," or "Barbie."
 
 
 13
 The 1964 agreements were in German[4] and were signed in Frankfurt, Germany. Some of them specify that the "place of jurisdiction is agreed to be Coburg," in Germany, or that the "place of performance and venue" is Coburg, without further elaboration.
 
 
 14
 During the nearly 40 years since the agreements were made, Barbie went on to achieve tremendous popularity, and Mattel reaped enormous financial benefit. It became the world's largest toy maker, with Barbie as its flagship product line. The years were not as kind to G&H, however. Bankruptcy proceedings were initiated against it in 1983, and it was deleted from the Commercial Register of the Amtsgericht Coburg in 1985.[5]
 
 
 15
 In 1999, Rolf Hausser, who had been G&H's managing director and acted for G&H in negotiating the 1964 agreements, contacted Mattel to inquire about the identity of the representatives who negotiated the 1964 agreements on Mattel's behalf. Two years later, in May 2001, G&H (through a court-appointed subsequent liquidator, Margarethe-Lilly Hausser, who is Mr. Hausser's wife) filed its lawsuit against Mattel in Germany, alleging fraud in connection with the 1964 agreements. Specifically, G&H claimed that it had been induced to accept a flat fee for the 1964 licenses based on material misrepresentations by Mattel regarding the number of Barbie dolls it was selling in Germany and internationally. G&H asserted that it would have insisted on a per doll royalty had it known the actual volume of Barbie sales. As relief, G&H sought from the German court (1) a declaration that the 1964 agreements are not binding, and (2) damages based on an appropriate royalty for every Barbie doll sold by Mattel since 1964.[6]
 
 
 16
 Shortly after learning of the German lawsuit, Mattel responded by initiating its own action against G&H, Rolf Hausser, and Margarethe-Lilly Hausser (collectively, "G&H" or "Defendants") for declaratory and injunctive relief in federal district court in Los Angeles, now known as the Central District of California. Mattel subsequently filed a first amended complaint. Relying on the 1964 licensing agreements and the 1963 dismissal, Mattel prayed for (1) declaratory relief that the Defendants have no protectible interests or enforceable rights to assert, and (2) injunctive relief barring the German action. Mattel also filed a motion for a preliminary injunction to enjoin Defendants from proceeding with the German lawsuit. That motion was denied by the district court.
 
 
 17
 Defendants moved to dismiss Mattel's lawsuit. Without oral argument or an evidentiary hearing, the district court granted that motion and dismissed Mattel's suit on the grounds noted above. The court subsequently denied Mattel's motion for reconsideration. This appeal followed.
 
 II. PERSONAL JURISDICTION
 
 18
 The bulk of the discussion in the district court's order granting the motion to dismiss — and most of the arguments made to us by the parties — concerns the question of whether the Defendants were subject to personal jurisdiction in California. We review de novo the district court's decision to dismiss for lack of personal jurisdiction. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1128 (9th Cir.2003). Mattel bears the burden of establishing the district court's personal jurisdiction over the Defendants. Harris Rutsky, 328 F.3d at 1129.
 
 
 19
 Where, as here, the district court did not hold an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction to survive the motion to dismiss. Id. To make that showing, Mattel need only demonstrate facts that, if true, would support jurisdiction over the Defendants. Id. Unless directly contravened, Mattel's version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in Mattel's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. Id.
 
 
 20
 The procedural posture of this case is important. We do not decide whether Mattel has proven its contentions, but only whether it has made a prima facie case for personal jurisdiction.
 
 
 21
 Similarly, we need to be clear on the issue before us now. The question is not whether Mattel will or should ultimately prevail on its arguments that G&H's claims in the current German action are barred by the 1963 dismissal of the California lawsuit or that an injunction should be issued to prevent G&H from proceeding with the German action. Rather, the question is whether the district court had personal jurisdiction over the Defendants in the current California action to permit the court to entertain and decide Mattel's claim.
 
 
 22
 Mattel does not contend that the Defendants are subject to the district court's general jurisdiction. The only question with respect to personal jurisdiction is whether the district court may exercise specific (long-arm) jurisdiction over them. Toward this end, Mattel's argument in favor of exercising jurisdiction is mostly based on the fact that G&H filed the 1961 litigation in California, specifically in the Los Angeles federal district court.
 
 
 23
 An exercise of specific "jurisdiction must comport with the state long-arm statute, and with the constitutional requirement of due process." Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995) (internal quotation marks and citation omitted). California's long-arm statute allows courts to exercise jurisdiction to the limits imposed by the Due Process Clause of the United States Constitution. Cal.Code Civ. P. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); see Harris Rutsky, 328 F.3d at 1129.
 
 
 24
 Thus, we examine whether exercising jurisdiction over Defendants would offend due process. Due process requires that, "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks and citation omitted). In determining whether a district court has specific jurisdiction in compliance with due process requirements, we employ the following three-part test: "`[S]pecific' jurisdiction exists if (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." Bancroft & Masters v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). We address each of these requirements in turn.
 
 A. Purposeful availment
 
 25
 G&H performed an act and purposefully availed itself of the privilege of conducting activities in California when it filed the lawsuit against Mattel in 1961.[7] Thompson v. Thompson, 798 F.2d 1547, 1549 (9th Cir.1986), aff'd, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (defendant "purposely availed herself of the privilege of conducting her activities in California when she invoked the benefits and protections afforded by California law by initiating an action"); Threlkeld v. Tucker, 496 F.2d 1101, 1104 (9th Cir.1974), cert. denied, 419 U.S. 1023, 95 S.Ct. 499, 42 L.Ed.2d 297 (1974). Whether the filing of the 1961 action in California is too attenuated to support personal jurisdiction over G&H — because there is an insufficient connection between the 1961 California action and the current lawsuit, because of the passage of time, or for some other reason — may be logically dealt with in applying the second and third parts of the test. The first requirement, "purposeful availment," is satisfied.
 
 
 26
 B. Relationship between the claim and the forum-related activities
 
 
 27
 The second prong of the specific jurisdiction test asks whether the claim arises out of or results from the Defendants' forum-related activities. We use a "but for" test to conduct this analysis. Harris Rutsky, 328 F.3d at 1131-32.
 
 
 28
 The question can be formulated as this: But for G&H's contacts with California, would Mattel's claims against G&H have arisen? G&H, together with Marx, filed a lawsuit in California against Mattel and then subsequently entered into a stipulation of dismissal in that action to dismiss claims with prejudice. Now, Mattel has filed an action seeking to enforce that stipulation of dismissal. But for the suit brought by G&H and the dismissal to which G&H consented, Mattel would have no order or judgment to try to enforce. In a literal sense then, the current claim appears to satisfy the "but for" test.
 
 
 29
 More broadly, there is a clear relationship between the 1961 lawsuit filed by G&H in California and the current lawsuit brought by Mattel. Because this current action is a defensive action by Mattel, instituted in response to G&H's current action in Germany, the usual inquiry under this factor must be refocused. The subject matter of Mattel's current action is defined by the claims made in the lawsuit filed by G&H in Germany in 2001. In order to determine whether Mattel's current action is related to G&H's forum-related activities in 1961, we must look to the claims being asserted by G&H in the German action and compare them to the claims asserted in the 1961 lawsuit. The district court's conclusion that personal jurisdiction over G&H was lacking appears to have been based primarily on a determination that the claims currently asserted by G&H in Germany are different from the claims asserted by G&H in California 40 years ago: "The dismissal of the 1961 California Action, however, is not at issue. Defendants do not challenge the validity of the dismissal. Nor do they assert in the German Action either the `copying' or patent infringement claims of the California Action." After comparing G&H's claims in the 1961 California and 2001 German actions, we do not agree that the claims are so different.
 
 
 30
 In their 1961 complaint, G&H and Marx alleged that Mattel was "willfully, knowingly, and deliberately infringing" the "doll hip joint" patent and prayed for an injunction against "further infringement" of that patent by Mattel, as well as an accounting and an award of damages. In the "counterclaim" later filed in that same lawsuit against Mattel, in response to Mattel's counterclaim, G&H and Marx asserted a broader claim for "unfair competition." That claim was based on the factual allegations that Mattel's Barbie dolls were "a direct take-off and copy" of G&H's Bild-Lilli doll, and that Mattel, knowingly, "falsely and misleadingly, has advertised and represented that it was [Mattel] that has pioneered and originated the said doll design." Based on that counterclaim, G&H and Marx prayed for "such damages as [they] have suffered as a result of the wrongful acts of [Mattel] in its commission of the acts of unfair competition."
 
 
 31
 The 2001 complaint filed by G&H in Germany on its face appears to present a different claim concerning a different time, but it rests essentially on the same underlying foundation — the factual allegation that Mattel's Barbie was "a direct take-off and copy" of Bild-Lilli and violated G&H's intellectual property rights in the Bild-Lilli doll. Specifically, G&H has asserted a claim of fraud, under German law, against Mattel in connection with alleged misrepresentations in obtaining G&H's agreement to the 1964 contracts. Mattel's actions in 1964 were obviously subsequent to the dismissal of the first California litigation in 1963, so those actions would not ordinarily be covered by that dismissal. But the premise behind the G&H claim is that Mattel violated G&H's intellectual property rights pre-1964, and that without the 1964 agreements, Mattel's actions would have continued to violate those rights. The statement of allegations filed by G&H with the German court alleges property right infringements essentially similar to those alleged in the 1961 California action and makes clear that the alleged infringements date from 1959, prior to the filing and the dismissal of the California action:
 
 
 32
 The plaintiff owns the rights of use according to copyright law for a doll that the defendant reproduced without change and, from 1959 to 1964, produced and marketed as the Barbie doll whilst infringing the plaintiff's rights of use without the plaintiff knowing of such infringements at the time.
 
 
 33
 * * *
 
 
 34
 In fact, the Lilli plagiarism was a sales hit at the New York toy show in 1959. * * *
 
 
 35
 In view of the 1.7 million patent infringements that had already taken place in 1964....
 
 
 36
 * * *
 
 
 37
 The conclusion of the above-mentioned agreement proves that the defendant was aware of the legal situation that the plaintiff was entitled both to the rights of use according to copyright law and the patent rights for the Lilli doll that had been copied by the defendant in the shape of the Barbie doll. The defendant openly admitted that it had infringed the plaintiff's patent rights in the past by copying the Lilli doll. (all emphases added)
 
 
 38
 The remedies sought by G&H include a declaratory judgment that it is not required to honor the 1964 license agreement and an award of unspecified damages, including "an appropriate royalty for every Barbie doll sold since 1964, and part of the revenues from license agreements concluded with other parties."
 
 
 39
 If Mattel is correct that the dismissal with prejudice of the 1961 California action effected a permanent resolution of G&H's allegations that Barbie was "a direct take-off and copy" of Bild-Lilli, then a substantial portion of the claim currently asserted by G&H in the German action would appear to be barred.[8] G&H has demonstrated that it is aware of that possibility by arguing to the German court that it should not recognize the 1961 California lawsuit and its dismissal, at least in part because G&H did not actually participate in that lawsuit or its dismissal, such that any preclusive effects from the previous California lawsuit should not be applied to limit its current claims. G&H has not attempted to make that argument to us, and properly so, because at this stage we must resolve factual doubts in favor of Mattel. By making that argument to the German court though, G&H has in effect acknowledged that the prior California dismissal could limit the claims that G&H may currently assert, in Germany or elsewhere. That is enough to establish, for purposes of personal jurisdiction, the necessary relationship between G&H's actions in California 40 years ago and the claim that Mattel is seeking to bring in California today.[9]
 
 
 40
 The passage of time does not change that. One factor that makes this case unusual, and which the district court specifically cited in granting Defendant's motion to dismiss, is the gap in time of nearly 40 years between the first California action and the second. The district court noted that we have said that the relevant contacts between the defendant and the forum state "must not have been weakened by the passage of time." Threlkeld, 496 F.2d at 1104. In that case, we affirmed the assertion of personal jurisdiction, noting that only fourteen months had passed.
 
 
 41
 Forty years is plainly a lot longer than fourteen months. But the delay here is attributable solely to G&H. Mattel had no need or reason to return any earlier to the California court concerning this matter because G&H did not assert its claim until almost four decades had gone by. There is no argument that Mattel failed to act promptly at that point. If G&H had filed its claim in Germany later in the year 1964, the passage of a few months would not have been a reason to prevent Mattel from filing its lawsuit in California. If G&H is entitled to pursue its claim in 2001 despite the extended passage of time, there is no logical reason why that passage of time should cost Mattel the ability to file its claim against G&H in California.
 
 
 42
 Mattel may not be correct in its argument that the previous dismissal limits the claims that G&H may properly assert today. The district court, in denying Mattel's motion for preliminary injunction, concluded that Mattel had failed to establish a likelihood of success on that argument. But that assessment is not a basis for determining whether the court has personal jurisdiction over G&H. As we noted above, at this stage of the case we do not decide whether Mattel will ultimately prevail, but only whether it has presented a prima facie case for personal jurisdiction, such that a court in California could properly entertain Mattel's claim. The substance of the claims asserted by G&H in the current German action is sufficiently close to the claims at issue in the 1961 California action to lead us to conclude that the assertion of specific jurisdiction over G&H is appropriate under the second prong of the test. The claim currently asserted by Mattel sufficiently arises out of or results from G&H's actions in filing and subsequently dismissing the previous lawsuit in California.
 
 
 43
 C. The Reasonableness of the Exercise of Jurisdiction
 
 
 44
 Finally, specific jurisdiction must be reasonable. The party seeking to defeat personal jurisdiction "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Harris Rutsky, 328 F.3d at 1132 (quoting Burger King v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). In our decisions we have identified seven other factors to consider in weighing the reasonableness of personal jurisdiction:
 
 
 45
 (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.
 
 
 46
 Harris Rutsky, 328 F.3d at 1132. No one factor is dispositive; rather, we balance all seven. Id. Reviewing these factors does not persuade us that the exercise of specific jurisdiction over G&H would be unreasonable. The district court discussed these factors individually, and appeared to conclude that each and every one supported its conclusion that recognition of personal jurisdiction over G&H would violate due process. We do not agree.
 
 
 1. Defendants' interjection into California
 
 
 47
 G&H purposefully interjected itself into California's affairs by filing its suit against Mattel in 1961 and entering into a dismissal with prejudice in 1963. The district court discounted that action because 40 years had passed. As noted above, that should not weigh against Mattel. To the contrary, the nature of G&H's purposeful action in California — the act of filing a lawsuit on the same subject matter — may be enough by itself to support a conclusion that the exercise of jurisdiction over G&H is reasonable.
 
 
 2. The burden of defending in California
 
 
 48
 When it voluntarily filed a lawsuit on the same subject in California, G&H implicitly held itself out as being capable of litigating in California. There is no reason to permit it to renounce that capability now. Litigation in California is likely inconvenient, and this may be a factor for the court to consider with regard to the forum non conveniens issue, but under these circumstances it is not a factor that weighs heavily against the recognition of personal jurisdiction over G&H. Moreover, we note that the record contains correspondence which demonstrates that, prior to the filing of either of the currently pending lawsuits, G&H retained a nationally recognized firm of highly capable and sophisticated American lawyers, with an office in California, to represent its interests against Mattel. Indeed, a letter from that firm contained in the record says that G&H's German counsel for this matter was retained by the American law firm, not the other way around. The burden on G&H is not great.
 
 
 3. Conflict with Germany's sovereignty
 
 
 49
 The district court concluded that permitting the California action would offend German sovereignty because it would necessarily interfere with the pending German lawsuit and undermine the integrity of the German courts. We appreciate the desire not to infringe upon Germany's sovereignty, but this factor potentially weighs as much or more the other way. This matter was first presented to a California court, in 1961. If, as Mattel has argued, some of the claims currently asserted by G&H in Germany are properly barred by the disposition of that litigation, then the sovereignty of the United States and the integrity of the federal court in Los Angeles have an even stronger claim to recognition. A final disposition of one court weighs heavier than the mere pendency, without resolution, of a lawsuit before another court that has not yet completed addressing the merits of the claim.
 
 
 4. California's interest in adjudicating the dispute
 
 
 50
 The district court identified this factor as "non-existent." We view California's interest as being at least as strong as Germany's interest, however. Since this is a private commercial matter, neither state has a uniquely strong interest at stake. There are citizens of each involved in this dispute. Perhaps more importantly, California and Germany each is properly concerned with the behavior of parties in commercial transactions, and with making a forum available to resolve commercial disputes consistent with the law, the important principles of which appear to be shared. To the extent that either claim is stronger, it is probably California's, whose court has issued an order which, arguably, is being disregarded by G&H in the German action.
 
 
 5. The most efficient judicial resolution
 
 
 51
 Because the German action was previously filed and has already progressed some distance, the district court may have been correct in its assessment that this factor favors letting the German action proceed. In the current circumstances, though, this factor may be more meaningful with respect to forum non conveniens. It does not provide significant support for the conclusion that the recognition of jurisdiction over G&H in California offends due process.
 
 
 6. The importance of the forum to Mattel's interests
 
 
 52
 Mattel's interest in a California forum is minimal. Indeed, given that Mattel is an international business with operations, among other places, in Germany, and that the 1964 agreements were in the German language, were negotiated and executed in Germany, and identify a location in Germany as the place of jurisdiction, there is no apparent reason to favor California for Mattel's sake.
 
 
 7. The existence of an alternative forum
 
 
 53
 For similar reasons, this factor does not add support in favor of Mattel's preference for California. Germany provides an adequate forum for resolving disputes, one which Mattel seems to have agreed to in the 1964 agreement. It could be argued that the California court may be in a better position to evaluate the significance of the 1963 stipulation of dismissal, but that advantage is extremely minimal. Notably, though the court may be the same, the judges have surely changed, so the California forum offers no practical advantage in that respect.
 
 
 54
 These seven factors, on balance, do not seem to weigh very heavily in either direction. To the extent that they tip at all, they tip in favor of finding that the district court has personal jurisdiction over G&H at this stage. They do not support a conclusion that due process would be violated by recognition of jurisdiction over G&H.
 
 
 55
 Nor is such a conclusion supported by the other factors considered in our three-part test. The order of dismissal based on a lack of personal jurisdiction over Defendants is reversed.
 
 III. OTHER GROUNDS FOR DISMISSAL
 
 56
 In addition to holding that it did not have personal jurisdiction over the Defendants, the district court also dismissed the case based upon improper venue, the doctrine of forum non conveniens, and a conclusion that Mattel was seeking to use the Declaratory Judgment Act in an inappropriate fashion. Although those arguments raised issues in addition to those relevant to personal jurisdiction, it appears that the district court's conclusions regarding these additional grounds for dismissal was influenced at least in part by the court's conclusion as to personal jurisdiction and its assessment that the current German action did not challenge the effectiveness of the order dismissing the claims in the 1961-63 California litigation. We vacate the district court's determinations and remand those questions for further consideration in light of our holding that the district court does have personal jurisdiction over G&H.
 
 IV. PRELIMINARY INJUNCTION
 
 57
 A district court's order with respect to preliminary injunctive relief is subject to limited review and will be reversed only if the district court abused its discretion or based its decision on an erroneous legal standard or on a clearly erroneous finding of fact. United States v. Peninsula Communications, Inc., 287 F.3d 832, 839 (9th Cir.2002).
 
 
 58
 To obtain a preliminary injunction, a moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions going to the merits are raised, and the balance of hardships tips sharply in favor of the moving party. Meredith v. Oregon, 321 F.3d 807, 815 n. 8 (9th Cir.2003).
 
 
 59
 Mattel has devoted relatively little attention to the preliminary injunction issue, arguing simply that the district court's denial of preliminary injunctive relief was based on the same alleged misconception by the district court that G&H's German action does not contest the validity of the 1963 California dismissal. While that perception may have played some role in the district court's evaluation of the motion, it was by no means the only or even the primary consideration identified by the court in denying the motion. The order denying Mattel's motion for preliminary injunction identified the correct legal standard and discussed several other factors, such as Mattel's failure to establish irreparable injury.
 
 
 60
 Furthermore, to defeat the motion to dismiss for lack of personal jurisdiction, it was enough for Mattel to present a prima facie case supporting jurisdiction over G&H. On the motion for preliminary injunction, both the burden of persuasion and the issues properly under consideration were different. Mattel, as the moving party, had to bear the burden of persuasion, and the court could and should look to the merits of the underlying contentions. In this case the court's assessment was that Mattel had not carried its burden of persuasion by demonstrating a likelihood of success on the merits, or even the existence of serious questions on the merits. That conclusion did not represent an abuse of discretion.
 
 V. CONCLUSION
 
 61
 The district court's denial of the motion for preliminary injunction is affirmed. The order of dismissal for lack of personal jurisdiction is reversed. The order of dismissal based on other grounds is vacated and remanded for further consideration in light of this opinion. Each party is to bear its own costs on appeal.
 
 
 62
 AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; REMANDED.
 
 
 
 Notes:
 
 
 [1]
 See, e.g., Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894 (9th Cir.2002), cert. denied, 537 U.S. 1171, 123 S.Ct. 993, 154 L.Ed.2d 912 (2003); Christian v. Mattel, Inc., 286 F.3d 1118 (9th Cir.2002); Walter v. Mattel, Inc., 210 F.3d 1108 (9th Cir.2000).
 
 
 [2]
 The narrative set out here is drawn from the pleadings filed by the parties, notably the First Amended Complaint filed by Mattel in the instant action and the comparable document filed on behalf of G&H in the current German action, and from factual statements contained in the briefs filed with us. Although we believe this description to be accurate, we do not purport to find any of these facts and do not preclude the possibility that evidence may subsequently support contrary findings
 
 
 [3]
 Papers filed by G&H in the current German action suggest that the 1961 California action may have been filed and resolved by Marx without the knowledge or authorization of G&H. That assertion has not been made to us, and we do not consider either its factual accuracy or potential legal effect
 
 
 [4]
 We have been provided by the parties with English translations of the agreements and other documents, including some of the filings in the current German litigation initiated by G&H in 2001. We are not aware of any disputes concerning the accuracy of the translations, so we quote from them as if they were the original documents
 
 
 [5]
 The vagaries of the toy business are also illustrated by the fate of Louis Marx & Co., G&H's licensee. After World War II that company was the world's largest manufacturer of toys; Louis Marx himself appeared on the cover of Time magazine in 1955 as "The Toy King." By 1980, however, the company's successor was forced to file for bankruptcySee http:// shop.marxtoys.com/index.cgi/aboutus.html?id=BUgA7Yqg & mv_pc=57 (last checked 11/24/03), a website maintained by Marx Toys, Inc., a company which acquired rights to certain assets but which is careful to note that it is "not affiliated with, nor a successor to, Louis Marx & Company."
 
 
 [6]
 On December 13, 2002, the District Court Nurmberf-Furth, 4th Commercial Court, dismissed G&H's case with prejudice based on a statute of limitations and the legal incapacity of G&H to assert its claims because it has been liquidated. G&H is currently appealing that decision
 
 
 [7]
 Perhaps because the district court concluded that it lacked personal jurisdiction over G&H, it did not give separate attention to the question of personal jurisdiction over the other defendants, Rolf and Margarethe-Lilly Hausser, beyond noting that they were not parties to the 1961 California lawsuit. Neither did the parties focus separately on them in their arguments to us. For the most part, all three defendants were treated together, based on the facts pertaining to the company. Given that context, we will treat the matter in the same way, and we do not express a view on the merits of a personal jurisdiction challenge by either or both of the individual defendants based on their individual circumstances
 
 
 [8]
 To the extent that the current German action includes claims by G&H which were not covered by the dismissal of the 1961 California action, Mattel concedes that the German action may continue and would not be barred
 
 
 [9]
 We note that it appears that the district court was not made aware of that filing in the German action and so was unable to consider its implications