Amanda HERMAN d/b/a Creating Wellness Chiropractic Center, Cynthia Gibson d/b/a Telephone Jacks, Lisa Feeley d/b/a All Bay Locksmith and Jeffrey P. Ordway d/b/a Earthworks Unlimited, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

YELLOWPAGES.COM, LLC., Defendant.

And Related Counter–Claim.

Prime Equity Holdings, Inc., Individually and on Behalf of All Others Similarly Situated, Plaintiff,

v.

YellowPages.com, LLC and AT & T, Inc., Defendants.

Civil Nos. 10cv0195 JAH(AJB), 10cv0798 JAH(AJB).

United States District Court, S.D. California.

March 29, 2011.

Christopher Collins, Frank J. Janecek, Jr., Robbins Geller Rudman & Dowd LLP, San Diego, CA, Paul Ivan Perkins, Lynch Lynch Held Rosenberg & Perkins, P.C., Hasbrouck Heights, NJ, Peter S. Pearlman, Cohn Lifland Pearlman Hermann &

Knopf LLP, Saddle Brook, NJ, Sabrina S. Kim, Milberg LLP, Los Angeles, CA, for Plaintiffs.

Richard Max Valdez, Sandler Lasry Laube Byer and Valdez, San Diego, CA, C. Allen Garrett, James F. Bogan, III, Kilpatrick Stockton LLP, Atlanta, GA, for Defendants.

## ORDER GRANTING DEFENDANT AT & T, INC.'S MOTION TO DISMISS [DOC. # 36]

JOHN A. HOUSTON, District Judge.

### INTRODUCTION

Currently pending before this Court is the motion to dismiss for lack of personal jurisdiction filed by defendant AT & T, Inc. ("AT & T") pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The motion has been fully briefed by the parties. After a careful consideration of the pleadings and relevant exhibits submitted by the parties, and for the reasons set forth below, this Court GRANTS defendant's motion to dismiss.

### BACKGROUND

On January 26, 2010, plaintiffs Amanda Herman, Cynthia Gibson, Lisa Feeley and Jeffrey P. Ordway, on behalf of themselves and all others similarly situated (collectively "the Herman plaintiffs"), filed a putative class action complaint against defendant YellowPages.com, LLC ("YellowPages.com") based on alleged fraudulent actions undertaken by YellowPages.com in its sale and marketing of its YPClicks! or YellowPages.com Guaranteed Clicks Program wherein members are guaranteed to receive a certain number of clicks on their YellowPages.com advertisement or website

during a specific period of time. *See* Case No. 10cv0195 JAH(MDD), Doc. # 1. On April 15, 2010, plaintiff Prime Equity Holdings, Inc., on behalf of itself and all others similarly situated ("Prime Equity" or "plaintiff"), filed a complaint against defendants YellowPages.com and AT & T based on the fraudulent actions undertaken by YellowPages.com in its sale and marketing of its YPClicks! internet advertising product. *See* Case No. 10cv0798 JAH(MDD), Doc. # 1. Prime Equity seeks to certify a nationwide class of "persons in the United States who purchased the YPClicks! program service from January 26, 2006 through the final disposition of this and any and all related actions." *Id.* ¶ 26. Prime Equity's complaint states that "AT & T is a communications holding company incorporated in Delaware and headquartered in Dallas, Texas" and alleges "AT & T, through its own employees and those of YellowPages.com, sells, markets, and operates the YPClicks! program." *Id.* ¶ 14. The two cases were consolidated on June 30, 2010.[1]

On July 20, 2010, AT & T filed the instant motion to dismiss for lack personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Doc. # 36. Prime Equity filed an opposition to the motion on August 16, 2010. Doc. # 41. AT & T's reply brief was filed on September 3, 2010. Doc. # 48. The motion was subsequently taken under submission without oral argument. *See* CivLR 7.1(d.1).

### DISCUSSION

#### 1. Legal Standard

Under Rule 12(b)(2), a court may dismiss a case for "lack of jurisdiction over

---

1. Once two cases are consolidated, all future documents are docketed in the lower numbered case. Thus, all references to the docket hereafter will be found in Case No. 10cv0195 JAH(MDD).

the person." Fed.R.Civ.P. 12(b)(2). The Ninth Circuit has established a two prong test for determining if the Court's assertion of personal jurisdiction is proper: (1) " 'jurisdiction must comport with the state long-arm statute,' " and (2) jurisdiction must comport " 'with the constitutional requirement of due process.' " *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 863 (9th Cir.2003) (quoting *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir.1995)).

As to the first prong, California's long arm statute provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this State or of the United States." Cal.Civ.Proc.Code § 410.10. Because California law allows the exercise of jurisdiction to the same extent as due process under the United States Constitution, the only question is whether the exercise of jurisdiction over the defendant is constitutional. *See Mattel*, 354 F.3d at 863. Under a due process analysis, the Court may only exercise jurisdiction in accord with "traditional notions of fair play and substantial justice," thus the nonresident defendant is required to have "certain minimum contacts" with the forum state in order for jurisdiction to be proper. *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Personal jurisdiction may be found where the defendant's activities subject him to either general or specific jurisdiction. General jurisdiction exists where a nonresident defendant's activities within a state are "substantial" or "continuous and systematic." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir.1977). In the absence of general jurisdiction, a nonresident defendant may still be sued in the forum if specific jurisdiction exists. *Id.* The Ninth Circuit has established a three part test to determine whether there is specific jurisdiction over a defendant:

> 'Specific' jurisdiction exists if (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privilege of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

*Mattel*, 354 F.3d at 863 (quoting *Bancroft & Masters v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000)). The Court must assess the contacts of each defendant separately to determine whether personal jurisdiction exists for each particular defendant. *Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir.2003); *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir.1990); *Gutierrez v. Givens*, 1 F.Supp.2d 1077, 1083 n. 1 (S.D.Cal.1998).

Plaintiff bears the burden of making a prima facie showing that jurisdiction is proper. *Mattel*, 354 F.3d at 862 (citing *Harris Rutsky*, 328 F.3d at 1128). Plaintiff need only make a *prima facie* showing that personal jurisdiction exists but "cannot 'simply rest on the bare allegations of its complaint.' " *Id.*; *see Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir.2002). "To make that showing, [plaintiff] need only demonstrate facts that, if true, would support jurisdiction over the [d]efendants." *Id.* " 'Conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a *prima facie* case for personal jurisdiction exists.' " *Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1075–76 (9th Cir.2003) (quoting *A.T. & T. v. Compagnie Bruxelles Lambert*, 94 F.3d 586,

588 (9th Cir.1996)); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir.2001).

## 2. Analysis

AT & T contends it lacks sufficient contacts with California to support the assertion of either general or specific jurisdiction in this case.

### a. General Jurisdiction

AT & T contends it "does not engage in activities of the type or scope that constitute 'continuous and systematic contacts' with California." Doc. # 36 at 5. AT & T explains that it is a Delaware company with its primary place of business in Texas and claims it does not conduct business in nor have any business relationship with California other than through its "indirect ownership interest in YellowPages.com." *Id.* at 5–6. Prime Equity, in opposition, disputes that AT & T is, in fact, a "pure" holding company based on evidence found on AT & T's website, in AT & T Inc.'s SEC filings and press releases, and in California lobbying records for AT & T Inc. and its affiliates.

AT & T, in reply, points out the case law cited by plaintiffs recognize that "personal jurisdiction is not properly exercised over a 'holding company' . . . even where the ultimate parent and its subsidiaries use the same logo, submit consolidated financial statements, or refer to the family of company as 'We' or 'the Company.'" Doc. # 48 at 1. AT & T claims that "each and every item of . . . 'evidence' [submitted by plaintiffs] shows that the activity or statement at issue properly is attributable to a subsidiary, and not to AT & T Inc." *Id.*

In the Ninth Circuit, "[t]he existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." *Doe,*

248 F.3d at 925. Jurisdiction is lacking so long as a parent's involvement in the subsidiaries' activities "is consistent with the parent's investor status." *Id.* at 926 (citing *United States v. Bestfoods,* 524 U.S. 51, 69, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998)). There are two exceptions to this general rule: where the subsidiary is the parent's alter ego or where the subsidiary acts as a general agent of the parent. *Harris Rutsky,* 328 F.3d at 1134 (citing *Doe,* 248 F.3d at 925).

AT & T supports its claimed status as a holding company with the following attestations, among others, by Steven Threlkeld, Executive Director the Finance Department of AT & T Services, Inc.:

1. AT & T Inc. is and always has been a holding company that was created, along with six other holding companies, in 1984 by the American Telephone and Telegraph Company as part of the settlement of *United States v. Western Electric Company, Inc.,* Civil Action No. 82–0192 (D.C.C.).

2. AT & T Inc. is currently the "indirect parent corporation of YellowPages.com, LLC which provides internet advertising services and uses the AT & T brand and logo under a licensing agreement with a subsidiary of AT & T Inc.

3. The AT & T brand and logo is shared by multiple companies and licensing fees for use of the brand and logo are paid to AT & T Intellectual Property, Inc.

4. The att.com website is maintained and administered by AT & T Intellectual Property, Inc. and AT & T Services, Inc., both of which are subsidiaries of AT & T Inc.

5. AT & T Inc. is a legally and factually separate corporate entity from

its subsidiaries, including Yellow-Pages.com. ˙Each of AT & T Inc.'s subsidiaries maintains its own independent corporate, partnership, or limited liability company status, identity and structure.

6. AT & T Inc. conducts no business directly with the public, does not own or maintain a telecommunications network, nor does it provide any telecommunications, internet, or advertising services of any kind to the public.

7. Although AT & T Inc. has officers and a board of directors, AT & T Inc. does not have any employees and produces nothing to sell or distribute.

8. AT & T Inc. does not have a presence in California, such as a mailing address or office.

9. AT & T Inc. pays no income, property or franchise taxes to California and is not registered, licensed or otherwise qualified to do business in California.

Doc. # 36–3 (Threlkeld Decl.) ¶¶ 5–17.

Prime Equity responds by presenting evidence found in AT & T's website, AT & T Inc.'s SEC filings and press releases, and California lobbying records for AT & T Inc. and its affiliates which Prime Equity contends negates AT & T's claimed status as a pure holding company. Doc. # 41 at 5 (citing Doc. # 41–2). Prime Equity asserts AT & T has established a physical presence in California by maintaining offices in Los Angeles and Sacramento. *Id.* at 5 (citing Doc. # 41–2, Exhs. B–H). Prime Equity also claims that AT & T employs lobbyists in California that are registered to "AT & T Inc. and Its Affiliates." *Id.* at 5 (citing Doc. # 41–2, Exh. B). Plaintiff supports this claim with evidence that "AT & T Inc. and Its Affiliates" is contained in the record of lobbying activity from 1999 to 2010. *Id.* at 6 (citing Doc. # 41–2, Exh. J–O).

Prime Equity also argues that AT & T's SEC filings show AT & T maintains regular contacts with California. *Id.* at 7–8 (citing Doc. # 41–2, Exh. Q). Prime Equity relies upon YellowPages.com account managers who possessed business cards containing the AT & T logo and bills that were sent out with the AT & T banner displayed across the top. *Id.* at 8 (citing Doc. # 41–2, Exh. R–S). Further, plaintiff argues that AT & T's website, www.att.com, contains language admitting its contacts with California. *Id.* (citing Doc. # 41–2, Exh. T). In addition, Prime Equity presents numerous press statements detailing AT & T's contact with California. *Id.* at 9–11 (citing Doc. # 41–2, Exh. V–LL).

In reply, AT & T contends that "each and every item of Prime Equity's 'evidence' shows … the activity or statement at issue properly is attributable to a subsidiary, and not to AT & T Inc." Doc. # 48 at 1. AT & T asserts that www.att.com is owned by AT & T Intellectual Property, which is merely a subsidiary of AT & T. *Id.* at 4 (citing Doc. # 36–3, Exh. A). AT & T points out that within this website there is further evidence that AT & T is merely a holding company of the subsidiaries and that the use of "AT & T" is merely a legitimate use of the parent's logo and does not amount to a basis for a finding of general jurisdiction. *Id.* at 5. Defendant states, in its affidavit by Mr. Threlkeld, that AT & T "does not own, lease, manage, or maintain any real property, office, residence or place of business in California." *Id.* at 5 (quoting Doc. # 36–3, Exh. A). AT & T argues that it does not employ any lobbyist in California, and Prime Equity has not given any direct evidence to support such a finding. *Id.* at 6 (citing Doc. # 36–3, Exh. A). As to the press releases,

AT & T points out that at the bottom of each the document states "AT & T Inc. is one of the world's largest telecommunications holding companies ..." *Id.* at 6–7 (citing Doc. # 41–2, Exh. V). Defendant argues that consolidated SEC filings (holding companies along with their subsidiaries) are "required by generally accepted accounting principles" and, thus, should not be used to pierce the corporate veil because such a ruling would result in companies no longer utilizing subsidiaries to conduct business. (*Id.* at 7 & n. 13).

This Court's review of the record reflects that AT & T's website, www.att.com, is owned and operated by AT & T Intellectual Property, a subsidiary of AT & T, which also owns the rights to the use of the AT & T logo. *See* Doc. # 36–3, Exh. A. Thus, this Court finds that the statements found on the www.att.com website and any use of the trademark on business cards or billing statements does not provide competent evidence of defendant's contact with the forum state. This Court notes the press releases clearly state that AT & T is a holding company and indicate the press releases were published by a subsidiary and not AT & T. *See* Doc. # 41–2, Exh. V. This Court is unconvinced by Prime Equity's contention that AT & T owns office buildings in California because Prime Equity has not offered proof of ownership of the buildings to rebut AT & T's sworn testimony attesting that it does not own any real property in California. Doc. # 36–3, Exh. A. In regards to the SEC filings, this Court agrees with AT & T that the filings cannot, by themselves, support a finding that AT & T engaged in continuous or systematic contact with California.

This Court further finds that Prime Equity's argument concerning the lobbying efforts of "AT & T Inc. and Its Affiliates" does not support a finding that AT & T has continuous and systematic contacts with the forum state. While it is unclear what entity employs lobbyists in California, even if it were AT & T that employs the lobbyists, this fact alone is insufficient evidence to support jurisdiction over the defendant. The cases cited by plaintiff are distinguishable from the instant case because jurisdiction in those cases was based on more than just evidence of lobbying efforts. *See* Doc. # 41 at 5–6 (citing *PCS Phosphate Co. v. Norfolk S. Corp.*, 520 F.Supp.2d 705 (E.D.N.C.2007); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1174 (9th Cir.2006); *Shepherd Invs. Int'l, Ltd. v. Verizon Commc'ns, Inc.*, 373 F.Supp.2d 853 (E.D.Wis.2005)). Here, Prime Equity has failed to present any other evidence which may give rise to a finding of personal jurisdiction over AT & T other than possible lobbying activities which alone cannot give rise to jurisdiction. *See Graziose v. Am. Home Products Corp.*, 161 F.Supp.2d 1149, 1153 (D.Nev.2001) (joining in the Second Circuit's holding that personal jurisdiction may not be founded upon any kind of lobbying activity because it would jeopardize public participation in government) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51 (2d Cir.1991)). This Court is persuaded by this reasoning. Thus, this Court declines to expose AT & T to the jurisdiction of this Court based solely on its alleged lobbying activities. Therefore, this Court finds that AT & T's contacts with California are not continuous or substantial to support the exercise of general jurisdiction.

**b. Alter Ego**

Prime Equity next argues that, even if AT & T is not subject to jurisdiction due to its own actions, then AT & T is subject to jurisdiction under the alter ego exception, because AT & T and YellowPages.com or AT & T's various other subsidiaries are in reality a single entity. To find any subsidiary to be AT & T's alter

ego, plaintiff must make a prima facie case "(1) that there is such unity of interest and ownership that the separate personalities of [the two entities] no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 591 (9th Cir.1996) (citations omitted).[2] The first prong requires a showing "that the parent controls the subsidiary 'to such a degree as to render the latter the mere instrumentality of the former.'" *Doe,* 248 F.3d at 926 (citing *Calvert v. Huckins,* 875 F.Supp. 674, 678 (E.D.Cal.1995)).

Prime Equity maintains that, at minimum, AT & T maintained control over YellowPages.com. Plaintiff asserts that AT & T received substantial benefit from the subsidiaries, including internet based advertisements and that the only way it could receive that benefit is from its subsidiaries. Doc. # 41 at 14 (citing Doc. # 41–2, Exh. KK). Plaintiff also points out that AT & T included wireless, wireline, and advertising in its profits and losses for overall operations. *Id.* (citing Doc. # 41–2, Exh. Q). Also plaintiff claims that AT & T offers "integrated solutions" to its customers from multiple subsidiaries that requires AT & T to "impinge upon the purported independence of its ... subsidiaries." *Id.* (citing Doc. # 41–2, Exh. LL). Defendant argues that YellowPages.com is separate and distinct from AT & T because AT & T merely has stock ownership of the company. Doc. # 36–1 at 7.

The allegation that defendant has benefitted from the subsidiaries and has some role in the major policy decisions of its subsidiaries is insufficient to establish uni-ty of interest and ownership. *Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1177 (9th Cir.1980) (holding that even where the holding or parent company is involved in major policy decisions of the subsidiary, this fact is not sufficient for establishing personal jurisdiction). This Court's review of the record reflects that defendant is merely engaging in major policies decisions to coordinate several subsidiaries. Thus, Prime Equity has failed to meet its burden of establishing the first prong required to meet the agency exception.[3]

#### c. Specific Jurisdiction

■ Prime Equity further argues that, if no general jurisdiction is found, then specific jurisdiction is applicable in this case. The Ninth Circuit has developed a test for determining the existence of specific jurisdiction. *See Bancroft & Masters,* 223 F.3d at 1086. Specific jurisdiction exists if "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Mattel,* 354 F.3d at 863 (quoting *Bancroft,* 223 F.3d at 1086).

Prime Equity contends, in opposition to AT & T's motion, that specific jurisdiction is appropriate because the complaint alleges AT & T exercised control over the YPClicks! program. In support of this assertion, Prime Equity provides the testimony of confidential witnesses who state they believed they were employees of AT

---

**2.** Plaintiff suggests that this Court apply the factors outlined in *B–S Steel of Kansas Inc. v. Texas Industries, Inc.,* 229 F.Supp.2d 1209, 1220 (D.Kan.2002). This Court finds the *B–S Steel.* factors based on Fifth Circuit law are inappropriate to apply here where there is controlling Ninth Circuit law.

**3.** Because Prime Equity cannot establish the first prong, this Court does not address the second prong concerning fraud or injustice.

& T. Doc. # 41 at 16. In reply, AT & T asserts that these unsupported beliefs are insufficient to rebut the fact that Prime Equity is a resident of Idaho, not California, and did not suffer any alleged injury in California, noting that "this Court has previously recognized specific jurisdiction focuses on the forum as the place of plaintiff's injury." Doc. # 48 at 9 (citing *In re Wireless Facilities, Inc. Derivative Litig.*, 562 F.Supp.2d 1098, 1103 (S.D.Cal.2008) (noting claim must "arise[ ] out of or result[ ] from the defendant's forum related activities.")).

This Court agrees with AT & T that the facts giving rise to this lawsuit could not have occurred in California when there is no evidence indicating AT & T does business in California and plaintiff is a resident of Idaho. Thus, this Court finds plaintiff has failed to show facts which support a finding that AT & T's actions in the forum gave rise to the claims alleged in the complaint. Because plaintiff cannot meet this prong of the three part test, this Court need not address the remaining two prongs. *See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 817–18 n. 10. Therefore, this Court finds the exercise of specific jurisdiction is not warranted here.

### d. Jurisdictional Discovery

Prime Equity lastly requests that, if this Court is not inclined to deny defendant's motion, it be allowed to conduct jurisdictional discovery. The Court has discretion to permit discovery to aid in determining whether it has personal jurisdiction. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir.1977). A district court may permit discovery when "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.*

Prime Equity contends discovery is necessary to further clarify the jurisdiction issue presented in this motion but points to no specific fact in dispute or needing further evidentiary support. *See* Doc. # 41 at 17. To the contrary, Prime Equity notes it has provided "voluminous facts and representations ... including numerous examples of the Company presenting itself to the public as an operating business with other 250,000 employees." *Id.* at 18. AT & T argues, in reply, that discovery is inappropriate, contending plaintiff is simply seeking to engage in a fishing expedition. Doc. # 48 at 9–10 (citing *Wince v. Easterbrooke Cellular Corp.*, 681 F.Supp.2d 688, 693 (N.D.W.Va.2010) (denying jurisdictional discovery where the plaintiff had only claimed jurisdiction over AT & T based on a press release because it refused to sanction a "fishing expedition.")). Defendant notes that Prime Equity's own authority recognizes a district court's refusal to allow jurisdictional discovery " 'will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.' " *Id.* at 10 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir.2008)). This Court finds that, here, Prime Equity has not met its burden of demonstrating that there are "pertinent facts" that are controverted or needing a more satisfactory showing in order to determine the issue of jurisdiction over AT & T nor has Prime Equity clearly shown any "actual or substantial prejudice would result by denying discovery. Therefore plaintiff's request to conduct jurisdictional discovery is **DENIED.**

### CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's motion to dismiss for lack of personal jurisdiction [doc. # 36] is **GRANTED,** and

2. Plaintiff's request for jurisdictional discovery is **DENIED.**