Anzhey **BARANTSEVICH**, an individual, Plaintiff,

v.

**VTB BANK, a Russian corporation, VTB Capital AM formerly known as VTB Bank Asset Management, a Russian corporation, VTB Capital, a New York corporation, and Beau Cameron, an individual, Defendants.**

Case No. CV 12–08993 MMM (AJWx).

United States District Court,
C.D. California.

May 29, 2013.

Belinda M. Meyer, Law Offices of Lin Meyer Inc., Tarzana, CA, for Plaintiff.

R. Thomas Wire, R. Thomas Wire Law Offices, Westlake Village, CA, for Defendants.

## ORDER GRANTING VTB BANK'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINTS

MARGARET M. MORROW, District Judge.

On March 18, 2012, Anzhey Barantsevich filed this action against VTB Bank.[1]

On January 4, 2013, VTB Bank moved to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.[2] Plaintiff filed a first amended complaint that added VTB Capital AM, VTB Capital, and Beau Cameron as defendants on January 25, 2013.[3] At a scheduling conference on February 25, 2013, the court advised the parties that it would deem VTB Bank's Rule 12(b)(2) motion as directed to the first amended complaint; the court denies the Rule 12(b)(6) motion as moot in light of the filing of the amended complaint. Plaintiff filed his opposition to VTB Bank's motion on March 6, 2013.[4] VTB Bank filed its reply on March 18.[5]

## I. FACTUAL BACKGROUND

This case concerns a failed software venture in Los Angeles, California. VTB Bank is a Russian "open joint stock company."[6] Its "core business" is the provision of banking and lending services to corporate customers.[7] VTB Bank has approximately twenty subsidiaries throughout the world that are banks and financial companies; collectively, these companies are known as the VTB Group.[8] Among the bank's subsidiaries are VTB Capital AM, a Russian company that has its headquarters in Moscow.[9] VTB Capital AM manages investment portfolios and venture capital funds for its clients.[10] It served as the investment manager for the venture fund at issue in this case. VTB Bank is also the parent of VTB Capital, Inc., a Delaware corporation with its principal place of business in New York.[11]

Plaintiff is a California citizen who resides in Los Angeles.[12] In 2004 or 2005, he met defendant Beau Cameron, who was a freelance special effects artist.[13] A few years later, plaintiff and Cameron decided to form a business to create visual effects software for use in movies.[14] Plaintiff and Cameron turned to VTB Group to locate funding for the venture,[15] and in that regard, met with Andrei Zuzin and Alexandra Johnson.[16] Zuzin was an employee

1. Complaint, Docket No. 1 (Oct. 18, 2012).

2. Motion to Dismiss Case, Docket No. 12 (Jan. 4, 2013).

3. First Amended Complaint ("FAC"), Docket No. 15 (Jan. 25, 2013).

4. Opposition to Motion to Dismiss Complaint ("Opp."), Docket No. 30 (March 6, 2013).

5. See Reply in Support of Motion to Dismiss Case ("Reply"), Docket No. 34 (March 18, 2013). VTB Bank's reply presents arguments regarding the dismissal of plaintiff's first amended complaint under Rule 12(b)(6). The newly added defendants have joined this portion of the reply. Because plaintiff has not had an opportunity to respond to the new arguments, and because the court has denied VTB Bank's Rule 12(b)(6) motion as moot, the court does not address them here.

6. Declaration of Yuri Soloviev ("Soloviev Decl."), Docket No. 12 (Jan. 4, 2013), ¶ 2.

7. Id., ¶ 3.

8. Id.

9. Id., ¶ 4.

10. Id., ¶ 5.

11. Declaration of Alberto Tronsco ("Tronsco Decl."), Docket no. 34 (March 18, 2013), ¶ 8.

12. FAC, ¶ 1.

13. Declaration of Anzhey Barantsevich ("Barantsevich Decl."), Docket No. 30 (March 6, 2013), ¶ 4.

14. FAC, ¶ 10.

15. Id.

16. Barantsevich Decl., ¶ 5.

of VTB Capital AM,[17] while Johnson was an independent consultant working for VTB Capital AM.[18] The discussions occurred both in Russia and California.[19]

Plaintiff contends VTB Group lawyers told him that, to facilitate the investment, he would have to form a shell company in Moscow; in response, he organized Zao Beau Laboratories ("Zao Labs").[20] Thereafter, VTB Capital AM provided equity financing to Zao Labs.[21] The investment was made using funds held by a closed-end mutual investment venture fund in which VTB Bank and an entity known as the Russian Venture Company were unitholders.[22] VTB Capital AM became a minority shareholder of Zao Labs;[23] the majority of shares were owned by Beau Cameron, Inc., a company jointly owned by plaintiff and Cameron.[24] Plaintiff, Zuzin, and Johnson were among the directors placed on the board of Zao Labs.[25] Plaintiff and Cameron also established a company in the United States, Beau Laboratories ("Beau Labs").[26] Beau Labs was formed as a wholly-owned subsidiary of Zao Labs.[27] The investment funds from VTB Capital AM were to be funneled through Zao Labs in Russia to Beau Labs in California, where they were to be used to develop software.[28]

VTB Capital AM's total investment was $7 million. It purportedly told plaintiff that, in order to protect its investors, the money would be paid in two phases; specifically, it advised that initially, $4 million would be wired to Beau Labs (through Zao Labs), and that the remainder of the funds would be paid once plaintiff and Cameron had made sufficient progress developing the software.[29] Plaintiff asserts he was advised that $2 million of the $7 million investment was to be repaid not to VTB Capital AM, but to two "entities that VTB Bank would designate."[30] When the first $4 million payment was made, Zuzin informed plaintiff that he would receive wiring instructions from Pete Gub regarding the entities that were to be repaid.[31] Plaintiff was subsequently told the funds were to be repaid to the offshore bank accounts of companies named Vestax and Bigland.[32] Zuzin said that Bigland was owned by Karman Ulukhanov, who was a member of the Zao Labs board of directors, and that funds were to be paid to him as a "finder's fee" for arranging the deal.[33] He reported that VTB Bank wanted funds wired to Vestax "in order to satisfy the Russian Government requirement that a portion of the investment funds contributed to Beau [Labs] be uti-

17. FAC, ¶ 15.

18. Declaration of Natalia Plugar ("Plugar Decl."), Docket No. 34 (Mar. 18, 2013), ¶ 5.

19. Barantsevich Decl., ¶ 5.

20. Id., ¶ 6.

21. Plugar Decl., ¶ 8.

22. Id., ¶ 7.

23. Plugar Decl., ¶ 9; FAC, ¶ 13.

24. Barantsevich Decl., ¶ 6.

25. Id.

26. Id.

27. FAC, ¶ 13.

28. Id., ¶ 13.

29. Id., ¶ 14.

30. Barantsevich Decl., ¶ 7.

31. Neither party identifies Gub or states for whom he worked.

32. Id., ¶ 7; FAC, ¶ 18.

33. FAC, ¶ 18.

lized by Russian companies."[34]

Plaintiff alleges that these representations were false, and that in fact the funds were being wired to Bigland and Vestax as "illegal kickback[s]."[35] Zuzin purportedly instructed plaintiff to report the wire transfers as "Research and Development Costs," and present the expenses to the Zao Labs board for approval.[36] Plaintiff followed Zuzin's instructions, wiring the funds as requested and presenting the expenses to the Zao Labs board.[37] The board did not question the Vestax and Bigland transfers.[38]

In early 2009, plaintiff's relationship with Cameron began to sour.[39] He began to question whether Cameron was actually developing software, while Cameron expressed dissatisfaction with his level of compensation.[40] Soon thereafter, both plaintiff and Cameron reported to the Zao Labs board that the other had stolen money from Beau Labs.[41] Cameron purportedly told the board that plaintiff had wrongfully converting the funds wired to Vestax and Bigland.[42] As a result, plaintiff lost his place on the Zao Labs board and was replaced by a VTB Group employee, chosen by Beau Cameron, Inc., the majority shareholder in Zao Labs.[43] Plaintiff asserts that "VTB Bank agreed to look the other way on monies proved to them to be stolen" by Cameron,[44] and instead made plaintiff the "fall guy."[45]

Subsequently, plaintiff filed this action. He alleges, *inter alia*, that defendants, including VTB Bank, engaged in fraud, unfair business practices, and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. He asserts that the court can exercise personal jurisdiction over VTB Bank for a variety of reasons. The court addresses each argument below.

## II. DISCUSSION

### A. Legal Standard Governing Rule 12(b)(2) Motions to Dismiss

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court may properly exercise jurisdiction over the defendant. *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir.2006); *Bohara v. Backus Hosp. Med. Benefit Plan,* 390 F.Supp.2d 957, 961 (C.D.Cal.2005) (citing *Ziegler v. Indian River Cnty.,* 64 F.3d 470, 473 (9th Cir. 1995)). Absent formal discovery or an evidentiary hearing, a plaintiff need make only a *prima facie* showing that jurisdiction is proper to survive dismissal. *Pebble Beach,* 453 F.3d at 1154; *Rio Prop., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th Cir.2002); *Ziegler,* 64 F.3d at 473.

To satisfy his burden, a plaintiff can rely on the allegations in his complaint to the extent they are not controverted by the moving party. See, e.g., *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir.2001) ("Where not directly contro-

---

34. *Id.,* ¶ 19.

35. *Id.,* ¶ 20.

36. Barantsevich Decl., ¶ 8.

37. *Id.,* ¶ 9.

38. *Id.*

39. *Id.,* ¶ 10.

40. *Id.*

41. *Id.*

42. *Id.*

43. *Id.*

44. *Id.,* ¶ 12.

45. *Id.,* ¶ 10.

verted, plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss"). If defendants adduce evidence controverting the allegations, however, the plaintiff must "'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.1977)). "Conflicts between [the] parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.2004); see also *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996) ("In determining whether [the plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists,'" quoting *WNS Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir.1989)).

■ "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach*, 453 F.3d at 1154–55 (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996)); see also *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 243 F.Supp.2d 1073, 1082 (C.D.Cal.2003) (citing *Aanestad v. Beech Aircraft Corp.*, 521 F.2d 1298, 1300 (9th Cir.1974)). Because California authorizes jurisdiction to the full extent permitted by the Constitution, see CAL.CODE CIV. PROC. § 410. 10, the only question the court must ask is whether the exercise of jurisdiction over defendants would be consistent with due process.

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir.2003); *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1317 n. 2 (9th Cir.1998).

■ For due process to be satisfied, a defendant must have such "minimum contacts" with the forum state that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There are two recognized bases for exercising personal jurisdiction over a nonresident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over it in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050–51 (9th Cir.1997).

## B. Whether the Court Can Exercise General Jurisdiction over VTB Bank

■ A court has general jurisdiction over a defendant if the defendant's contacts with the forum are "substantial" or "continuous and systematic." *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154; see also *Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir.1977); *Schwarzenegger*, 374 F.3d at 801 (plaintiff must show that defendant engaged in "'continuous and systematic general business contacts' that 'approximate physical presence' in the forum state," quoting *Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868; *Bancroft & Masters,*

*Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000)). When properly invoked, general jurisdiction allows a federal court to hear *any* cause of action, even one unrelated to defendant's activities within the state. See *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

▮ To determine if a defendant's activities within the forum are "continuous and systematic" or "substantial," the court must examine all of its activities impacting the state. See *Helicopteros,* 466 U.S. at 411, 104 S.Ct. 1868; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Perkins,* 342 U.S. at 445–49, 72 S.Ct. 413. "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft & Masters,* 223 F.3d at 1086 (citing *Hirsch v. Blue Cross, Blue Shield,* 800 F.2d 1474, 1478 (9th Cir.1986)).

VTB Bank has proffered evidence that it has no offices, employees, property, or assets in California, and does not solicit business in California.[46] Plaintiff proffers no evidence to the contrary; rather, he contends that the court may exercise general jurisdiction over VTB Bank based on the presence and activities of its subsidiaries in the United States. The court thus address this issue first.

**1. Whether the Contacts of VTB Bank's Subsidiaries with the Forum Permit the Court to Exercise General Jurisdiction over VTB Bank**

▮ "Where, as here, the defendant's alleged contacts [with the forum] are through its corporate subsidiaries, the [c]ourt must engage in a preliminary inquiry

ry to determine whether the subsidiaries' contacts are properly attributed to the defendant." *Unocal,* 248 F.3d at 925. The mere existence of a relationship between a parent company and its subsidiaries is not a sufficient basis upon which to exercise personal jurisdiction over the parent based on the subsidiaries' minimum contacts with the forum. *Id.* (citing *Transure, Inc. v. Marsh and McLennan, Inc.,* 766 F.2d 1297, 1299 (9th Cir.1985)); *Ryder Truck Rental, Inc. v. Acton Foodserv. Corp.,* 554 F.Supp. 277, 279 (C.D.Cal.1983) ("So long as the separation between parent and subsidiary corporations is real, even if merely formal, the use of the subsidiary to conduct business in California does not automatically subject the parent to suit in this state").

▮ To impute a local subsidiary's contacts with the forum to a foreign parent corporation, a plaintiff must show (1) that the parent and subsidiary are not really separate entities, but are "alter egos" of one another, or (2) that one acts as the agent of the other. *Unocal,* 248 F.3d at 925 (citing *El–Fadl v. Cent. Bank of Jordan,* 75 F.3d, 668, 676 (D.C.Cir.1996)); see also *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 420 n. 13 (9th Cir.1977) (noting that, when a court pierces the corporate veil, "not only would the acts of the part be imputed to the whole, as in any case of agency, but also the in-state 'presence' of one part may render the out-of-state part present in the forum as well"). If either the alter ego or the agency test is satisfied, the court may find that the contacts to support the exercise of personal jurisdiction over the foreign parent exist by virtue of its relationship with a subsidiary that has continual operations in the forum. *Bauman v. Da-*

---

46. Soloviev Decl., ¶ 8.

*imlerChrysler Corp.*, 644 F.3d 909, 920 (9th Cir.2011).

In determining whether personal jurisdiction over a parent company exists due to its subsidiary's contacts, there is "a general presumption in favor of respecting the corporate entity." *Calvert v. Huckins*, 875 F.Supp. 674, 678 (E.D.Cal.1995) ("Disregarding the corporate entity is recognized as an extreme remedy, and 'courts will pierce the corporate veil only in exceptional circumstances'"); see also *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir.1980) ("There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary").[47]

### 2. Whether VTB Capital is an Agent of VTB Bank

To establish agency, a plaintiff must show the services being performed by the subsidiary are of special importance to the parent. *Bauman*, 644 F.3d at 920. Specifically, the plaintiff must show: (1) that the subsidiary "functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services," and (2) that the parent corporation has a right to control the subsidiary's activities. *Id.* (citing *Unocal*, 248 F.3d at 928). The ultimate question is whether, "in the truest sense," the subsidiary's presence substitutes for the presence of the parent. *Unocal*, 248 F.3d at 929 (quoting *Gallagher v. Mazda Motor of Am., Inc.*, 781 F.Supp. 1079, 1085 (E.D.Pa.1992)).

Plaintiff asserts that VTB Capital, Inc and VTB Capital AM are "interchangeable" and together operate as the agent of VTB Bank in the United States.[48] As a threshold matter, plaintiff offers no evidence that VTB Capital, Inc. and VTB Capital AM are not separate legal entities. Despite plaintiff's allegation that the corporate names are used "interchangeably,"[49] VTB Bank has proffered evidence that VTB Capital, Inc. and VTB Capital AM are separate companies. VTB Capital, Inc. is a Delaware corporation that has its own officers and board of directors, its own corporate books and records, its own offices, and its own financial accounts.[50] VTB Capital AM is a distinct, separate Russian investment company. VTB Bank adduces evidence that neither VTB Capital, Inc. nor VTB Capital AM exercises control over the other.[51] Plaintiff cites no contradictory evidence; he appears simply

---

**47.** At the hearing, plaintiff argued that corporations in Russia may not have the same features as corporations here—e.g., legal separation between parent and subsidiary corporations. Plaintiff, however, adduced no evidence and cited legal authority supporting this argument. Indeed, in his opposition, he cited U.S. case law on the agency and alter ego theories of personal jurisdiction. (See Opp. at 11–15). As noted, plaintiff bears the burden of demonstrating that the court can properly exercise personal jurisdiction over VTB Bank. As he has adduced no support for his argument that Russian corporate structures and Russian corporate law differ from corporations in the United States and U.S. law, the argument that VTB Bank subsidiaries' contacts must be imputed to it because Russian law does not recognize parent and subsidiary corporations as distinct legal entities fails.

**48.** Plaintiff does not argue that VTB Capital, Inc. or VTB Capital AM operate as alter egos of VTB Bank. Thus, the court need not address that issue.

**49.** FAC, ¶ 4.

**50.** Tronsco Decl., ¶ 8.

**51.** *Id.*, ¶ 7.

to assume the entities are indistinguishable based on the similarity of their names, and on this basis to argue that in combination, they operate as an agent for VTB Bank. This is insufficient to overcome VTB Bank's clear evidence that the entities are distinct. To demonstrate that the court can exercise personal jurisdiction over VTB Bank, plaintiff must adduce evidence that either VTB Capital, Inc. or VTB Capital AM operates as an agent for VTB Bank in the United States. Because plaintiff has failed clearly to delineate between the two companies, it is impossible for the court to determine whether either one individually satisfies the agency test. As a consequence, plaintiff has not met his burden of demonstrating that the court can exercise jurisdiction over VTB Bank.

■ Moreover, even if VTB Capital, Inc. and VTB Capital AM could be viewed as a single entity ("VTB Capital"), plaintiff fails to show that this entity operates as VTB Bank's agent in the United States.[52] First, he cites no evidence suggesting that VTB Bank could not carry on its business absent VTB Capital's presence in the United States. The only evidence he adduces is an excerpt from VTB Capital's LinkedIn profile, which purports to describe the work performed by VTB Capital;[53] the profile states that VTB Capital is the "Investment Business of VTB Group [and] is one of the three strategic business arms of VTB Group."[54] It also states that VTB Capital "offers a full range of investment banking products and services," and oper-

ates in several cities worldwide, including New York.[55]

■ Plaintiff argues this synopsis shows the importance of VTB Capital to the VTB Group and VTB Bank, and thus satisfies the first prong of the agency test. The court disagrees. At most, the information contained in VTB Capital's LinkedIn profile establishes that it is a successful member of the VTB Group. The mere fact that a subsidiary performs a function that is beneficial to the parent corporation is insufficient to establish agency if the parent could carry on its business in the absence of the subsidiary's work; "for agency to exist, the subsidiary's activity must be integral to the parent's business." *United States v. Pangang Grp. Co.*, 879 F.Supp.2d 1052, 1063 (N.D.Cal.2012) (quoting *Hickory Travel Sys., Inc. v. TUI A.G.*, 213 F.R.D. 547, 553 (N.D.Cal.2003)); see also *Hickory Travel*, 213 F.R.D. at 553 ("For purposes of jurisdictional analysis, a subsidiary functions as the parent's agent if it accomplishes tasks that ... [are] an indispensable part of the parent's business").

Notably, plaintiff proffers no evidence that VTB Bank would undertake the activities or functions VTB Capital currently performs in the United States if the subsidiary did not exist. Based on the record, it appears VTB Bank is a commercial banking company, while VTB Capital AM and VTB Capital, Inc. are investment banks.[56] This is not a case in which VTB Capital serves as a conduit for VTB Bank's goods and services in the United States;

---

**52.** The court makes this assumption for sake of analysis only; as noted, there is *no* evidence in the record to support a finding that VTB Capital AM and VTB Capital, Inc. are the same or an integrated entity.

**53.** It is not clear from the profile whether this is the LinkedIn page for VTB Capital, Inc., VTB Capital AM, or a page referring collec-

tively to all investment banking firms associated with the VTB Group.

**54.** Meyer Decl., Exh. 24 (LinkedIn Profile).

**55.** *Id.*

**56.** Soloviev Decl., ¶¶ 4–5.

rather, VTB Capital offers services distinct from those provided by VTB Bank. Compare *Modesto City Sch. v. Riso Kagaku Corp.*, 157 F.Supp.2d 1128, 1132–33 (E.D.Cal.2001) (finding an agency relationship in a case in which a subsidiary was the sole means of selling and marketing the parent's products in the United States). Plaintiff also fails to adduce any evidence that VTB Bank would participate in U.S. venture capital markets if VTB Capital did not do business in the country. It thus has not demonstrated that VTB Capital is vital to VTB Bank's operations. See *Unocal*, 248 F.3d at 929 (holding that a subsidiary was not an agent because there was "no evidence that in the absence of [the foreign corporation's] California subsidiaries involved in petrochemical and chemical operations, [the foreign corporation] would conduct and control those operations").

Furthermore, while the LinkedIn profile suggests that VTB Capital as a whole is an important part of the VTB Group, as it states that "VTB Capital is [the] # 1 Equity and Bond bookrunner in Eastern Europe, as well as # 1 financial advisor to Russia," [57] this evidence sheds no light on the importance to VTB Bank of VTB Capital's operations *in the United States.* Nor does it demonstrate that VTB Bank would itself undertake to offer investment banking services here if VTB Capital ceased to exist. Without evidence that VTB Bank would enter the U.S. investment banking market if VTB Capital did not do business in the United States, the court cannot conclude that VTB Capital's investment banking activities are an "indispensable part" of VTB Bank's commercial banking business.

Plaintiff also fails to show that VTB Bank exercises the requisite degree of control over VTB Capital's operations. *Unocal*, 248 F.3d at 926 (an agency relationship is "typified by parental control of the subsidiary's internal affairs or daily operations"); *Salkin v. United Serv. Auto. Ass'n*, 767 F.Supp.2d 1062, 1068 (C.D.Cal. 2011) (finding no agency relationship where there was no evidence that the parent exercised "pervasive and continual control" over the subsidiary). As evidence that VTB Bank exercises control over VTB Capital, plaintiff proffers only excerpts from VTB Group's website and VTB Bank's consolidated financial statements. These excerpts purportedly describe the corporate structure of the group.[58] The descriptions are insufficient to prove an agency relationship. The website excerpts describe, in broad terms, the fact that VTB Bank may exercise its rights "as principal shareholder by means of participation of its representatives in [the] management bodies of subsidiaries." [59] It does not state that VTB Bank *has* exercised this power with respect to VTB Capital. More fundamentally, it does not suggest the type of control over daily affairs that is required to find an agency relationship. See *Unocal*, 248 F.3d at 920 ("[T]he record does not support plaintiffs' contention that [the parent corporation] *directly controls the day-to-day activities of [its subsidiaries].* The fact that [the parent] may indirectly control or supervise its subsidiaries[ ] does not lead the Court to a different conclusion"); *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir.1980) (evidence that a parent's executives worked closely with the subsidiary's executives on matters such as pricing was insufficient to make the subsidiary an agent, where the parent did not control the

---

**57.** Meyer Decl., Exh. 24.

**58.** Meyer Decl., Exh. 6–7.

**59.** *Id.,* Exh. 6.

internal affairs or daily operations of the subsidiary).

The financial statements plaintiff proffers state only that all members of the VTB Group must employ common accounting and risk management principles. The statements report, for example, that the "Management Board of VTB has overall responsibility for risk management." [60] They also state, however, that each subsidiary has its own chief risk officer and risk division responsible for risk management within the subsidiary.[61] While the subsidiaries must abide by "general principles of risk management" established by VTB Bank, there is no evidence that the bank directly controls the subsidiaries' risk management activities. See *Sonora Diamond Corp. v. Superior Court,* 83 Cal. App.4th 523, 542, 99 Cal.Rptr.2d 824 (2000) ("[T]he parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect [have] taken over performance of the subsidiary's day-to-day operations in carrying out that policy"); compare *Bauman,* 644 F.3d at 920 (concluding

that a parent and subsidiary had an agency relationship because they had an agreement that granted the parent "the right to control nearly every aspect of [the subsidiary's] operations").[62]

### 3. Whether VTB Capital is an Alter Ego of VTB Bank

■■■■ Plaintiff offers little, if any, argument that either VTB Capital, Inc. or VTB Capital AM is an alter ego of VTB Bank. To demonstrate that a nonresident company is the alter ego of an entity with a presence in the forum, such that the latter's jurisdictional contacts are properly imputed to the former, plaintiff must make a *prima facie* showing (1) that there is such a unity of interest and ownership that the separate personalities of the two entities no longer exist, and (2) that failure to disregard the separate identities of the two would result in fraud or injustice. *Harris Rutsky & Co.,* 328 F.3d at 1134 (citing *Unocal,* 248 F.3d at 926); *Flynt Distrib. Co., Inc. v. Harvey,* 734 F.2d 1389, 1393 (9th Cir.1984) (same). Plaintiff must also show that the parent exercises so much

**60.** *Id.,* Exh. 7.

**61.** *Id.* ("In each subsidiary bank of VTB risks are managed by the appropriate authorities, predominantly [the] Supervisory Council ... and Management Board. The standard organizational structure of [the] subsidiary banks includes a Chief Risk Officer and Risk division responsible for risk management."

**62.** At the hearing, plaintiff reasserted that the financial statements reflect VTB Bank's day-to-day control. In particular, he cited page 172 of Exhibit 7—a VTB Group financial statement—as evidence of such control. The cited page, however, actually demonstrates the opposite. It states that "on the Group level and within the group members (including VTB [Bank], its subsidiary banks and ... subsidiary companies) a number of collective bodies and units are established to coordinate day-to-day consolidated risk management activities." *(Id.* at 172). This statement demon-

strates that "within the group members," there are separate units managing day-to-day risk management; this refutes plaintiff's contention that VTB Bank controls those activities at its subsidiaries to the extent that it performs day-to-day risk management operations. VTB Bank has only "overall responsibility" for risk management within the VTB Group. *(Id.)* This does not suffice to demonstrate an agency relationship. See *Herman v. YellowPages.com, LLC,* 780 F.Supp.2d 1028, 1035 (S.D.Cal.2011) ("The allegation that defendant has benefitted from the subsidiaries and has some role in the major policy decisions of its subsidiaries is insufficient to establish unity of interest and ownership. This Court's review of the record reflects that defendant is merely engaging in major policies decisions to coordinate several subsidiaries. Thus, Prime Equity has failed to meet its burden of establishing the first prong required to meet the agency exception") (internal citation omitted).

control over the subsidiary that it "render[s] the latter [a] mere instrumentality of the former." *Harris Rutsky & Co.*, 328 F.3d at 1135.

 Plaintiff adduces no evidence contrary to that provided by VTB Bank; VTB Bank's evidence demonstrates that it is a separate legal entity from VTB Capital AM and VTB Capital, Inc. Plaintiff has proffered no evidence suggesting that the court should disregard the corporate structure of the VTB Group. He proffers no evidence, for example, of "undercapitalization, commingled funds or disregard for corporate formalities, all factors in evaluating whether there is a unity of interest between two entities." *Wady v. Provident Life and Accident Ins. Co. of Am.*, 216 F.Supp.2d 1060, 1068 (C.D.Cal.2002). Moreover, evidence of general policy-setting is insufficient to show the requisite unity of interest between the two companies, or to show that VTB Bank exercised the necessary degree of control over VTB Capital AM. A parent corporation "may be directly involved in the macro-management ... of its subsidiaries ... without exposing itself to a charge that each subsidiary is merely its alter ego." *Unocal*, 248 F.3d at 927. Application of the alter ego doctrine "requires some showing that the parent corporation[ ] not only dictate[s] general policies, but that [it] also control[s] how the company will be operated on a day-to-day basis." *Calvert*, 875 F.Supp. at 679; see also *Williams v. Canon, Inc.*, 432 F.Supp. 376, 381 (C.D.Cal.

1977) (plaintiff must demonstrate more than the fact that the parent "dictates [the] general policies" of the subsidiary to warrant piercing of the corporate veil). Thus, the alter ego test is satisfied "where the record indicates that the parent dictates *every facet* of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Unocal*, 248 F.3d at 927 (emphasis added).

### 4. Contacts of VTB Capital With the Forum

 Even if VTB Capital were properly considered an agent of VTB Bank, plaintiff has failed to demonstrate that VTB Capital has sufficient contacts with California to warrant the exercise of general personal jurisdiction over VTB Bank. As noted on the LinkedIn page proffered by "VTB Capital" has its headquarters in Moscow.[63] The profile lists several cities in which VTB Capital does business, none of which is located in California; the only city in the United States mentioned is New York. Plaintiff proffers no evidence, apart from the LinkedIn profile, as to where VTB Capital does business or what contacts with this forum it has.[64] Based on the record before the court, it does not appear that either VTB Capital, Inc. or VTB Capital AM has the requisite minimum contacts with the forum for general jurisdiction purposes. Consequently, even had plaintiff satisfied the agency test, there would be no basis for exercising general jurisdiction over VTB Bank.[65]

63. The court reiterates that it is unclear precisely whether a specific subsidiary is referenced in the LinkedIn profile or whether it address VTB Group's investment banking affiliates as a whole, i.e., that it includes both VTB Capital and VTB Capital AM.

64. The court reiterates that it is entirely unclear from the complaint and opposition which specific VTB Capital entity plaintiff references at any given point in time.

65. Plaintiff also makes a cursory reference to a joint venture named DFJ VTB that is present in Menlo Park, California. (Opp. at 1). Aside from noting the existence of this venture, he proffers no evidence and makes no allegations that would allow the court to evaluate whether VTB Bank's participation in the venture amounts to the type of systematic and continuous contacts needed to support general jurisdiction. Nor does plaintiff allege or

### 5. Whether VTB Bank Is Subject to Jurisdiction under RICO

Plaintiff makes a cursory reference to the fact that the Racketeer Influenced and Corrupt Organizations Act ("RICO") authorizes nationwide service and the exercise of jurisdiction over a defendant present anywhere in the United States in certain instances.[66] Although not clearly articulated, plaintiff appears to argue that since VTB Bank is present in the United States through the operations of VTB Capital, Inc. and VTB Capital AM, it is subject to nationwide service under RICO.

■■■ The RICO statute provides that "[a]ny civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a); *Damiani v. Adams*, 657 F.Supp. 1409, 1416 (S.D.Cal.1987). "In section 1965(b), Congress provided for service of process upon RICO defendants residing outside the federal court's district when it is shown that 'the ends of justice' require it." *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 538 (9th Cir.1986) (citing 18 U.S.C. § 1965(b)). "Congress intended the 'ends of justice' provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." *Id.* at 539 (citing *Farmers Bank of the State of Delaware v. Bell Mortgage Corp.*, 577 F.Supp. 34, 35 (D.Del.1978)).

■■■ "[Section] 1965(a) grants personal jurisdiction over an initial defendant in a civil RICO case to the district court for the district in which that person resides, has an agent, or transacts his or her affairs. In other words, a civil RICO action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant." *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1099 (D.C.Cir.2008) (citing *PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 70 (2d Cir.1998)). Plaintiff alleges that Cameron is a California citizen, who resides in the state and does business here.[67] It appears, therefore, that the court can properly exercise jurisdiction over him, which satisfies the threshold requirement for exercising jurisdiction over an out-of-district RICO defendant. See *Damiani*, 657 F.Supp. at 1416 ("The initial requirement which must be met to confer personal jurisdiction in a RICO action is set out in 18 U.S.C. § 1965(a)").

■■■ To take advantage of nationwide service under RICO, however, a plaintiff must adduce evidence that there is no other district in the United States that would have personal jurisdiction over all of the alleged co-conspirators. See *Butcher's Union Local No. 498*, 788 F.2d at 539 ("For nationwide service to be imposed under section 1965(b), . . . the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators"). Plaintiff has made no effort to show that there is no other district in the country that could exercise jurisdiction over all of the defendants. Other than alleging that "VTB Capital" does business in New York, he proffers no evidence re-

---

proffer any evidence that DFJ VTB was in any way involved in the allegedly wrongful conduct pled in the complaint. Accordingly, plaintiff's one-sentence reference to the joint venture does not support the exercise of general jurisdiction over VTB Bank in this case.

**66.** Opp. At 8.

**67.** FAC, ¶ 2.

garding defendants' contacts with other districts. While it is not clear that there is another district that could exercise jurisdiction over all defendants, plaintiff has the burden of showing affirmatively that this is the case. See *Leskinen v. Halsey*, No. 2:10–cv–03363 MCE KJN PS, 2011 WL 4056121, *8 (E.D.Cal. Sept. 12, 2011) ("Plaintiff satisfied the requirement that the court have personal jurisdiction over at least one of the participants because McHenry appeared in this court and filed what is arguably an answer that did not preserve the defenses of lack of personal jurisdiction and improper venue. Nevertheless, ... *plaintiff has not met her burden* to demonstrate that no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators" (emphasis added)); *Gutierrez v. Givens*, 989 F.Supp. 1033, 1038 (S.D.Cal.1997) ("Plaintiffs have not demonstrated that no other district exists in which all Defendants would be subject to jurisdiction. Therefore, personal jurisdiction cannot be established under § 1965(b) at this time"). Plaintiff has made no effort to satisfy his burden in this regard; he makes a single cursory reference to the fact that nationwide service is available under RICO. The court therefore declines to find that it can exercise general jurisdiction over VTB Bank under RICO.

In sum, the court finds no basis for exercising general jurisdiction over VTB Bank. The court next considers plaintiff's contention that it can exercise specific jurisdiction over VTB Bank.

### C. Whether the Court Can Exercise Specific Jurisdiction over VTB Bank

■ Before the court can exercise specific jurisdiction over a defendant, plaintiff must show three things: (1) that the defendant did some act or consummated some transaction in California by which he purposefully availed himself of the privilege of conducting activities in the state or that he undertook an act that was purposely directed at the state; (2) that plaintiff's claims arise out of such activities; and (3) that the exercise of jurisdiction is reasonable. See *Unocal Corp.*, 248 F.3d at 923; *Fireman's Fund Ins. Co.*, 103 F.3d at 894.

■ "Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1195 (9th Cir.1988). To demonstrate purposeful availment, plaintiff must show that VTB "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir.1990) (citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir.1990), overruled on other grounds, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)); see also *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, ... or of the 'unilateral activity of another party or a third person' ...."). A defendant's contacts must be such that it should "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559.

■ Courts distinguish between contract and tort cases in assessing whether the first prong of the specific jurisdiction test is met. See *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir.1991); see *Scholl v. F.D.I.C.*, No. 08–3977 SC, 2009 WL 1625947, *6 (N.D.Cal. June 5, 2009) ("A purposeful availment analysis is most

often used in suits sounding in contract. A purposeful direction analysis is most often used in suits sounding in tort"). Here, plaintiff asserts claims for fraud and RICO wire transfer violations; these claims sound in tort. In tort cases, courts can exercise specific jurisdiction over defendants who have committed an act that has an effect in the forum state, even if the act itself takes place outside state boundaries. See *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir.1985) ("The commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements under *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1288 (9th Cir.1977). A tortious act, standing alone, can satisfy all three requirements under *Data Disc* if the act is aimed at a resident of the state or has effects in the state").

■ Under the "effects test," a court can exercise personal jurisdiction over a defendant if the defendant "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Excel Plas, Inc. v. Sigmax Co., Ltd.*, No. 07–CV–578–IEG (JMA), 2007 WL 2853932, *6 (S.D.Cal. Sept. 27, 2007) (citing *Bancroft & Masters*, 223 F.3d at 1087). It is not necessary that the defendant have had direct contact with the forum state. *Id.* (citing *Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990)).

In applying this test, the court must assess whether VTB Bank committed intentional actions, expressly aimed at Cali-

fornia, causing harm it knew was likely to be suffered in California. *Haisten v. Grass Valley Medical Reimbursement Fund*, 784 F.2d 1392, 1397 (9th Cir.1986) ("[W]ithin the rubric of 'purposeful availment' the Court has allowed the exercise of jurisdiction over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state," citing *Calder v. Jones*, 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

Plaintiff argues that VTB Bank aimed several actions expressly towards California. He asserts that it funded the venture between him and Cameron, understanding that the activities of the venture would be carried out in California. He also asserts that formation of the joint venture was discussed with purported VTB Bank representatives in San Jose, California.[68] Plaintiff's arguments, however, largely turn on a finding that VTB Capital AM and VTB Bank are the same entity, because all of the specific contacts plaintiff alleges that VTB Bank has with the forum are actually contacts of VTB Capital AM. The only affirmative conduct in which VTB Bank itself purportedly engaged was its initial investment in the VTB Capital AM venture fund. Beyond this, it is the conduct of VTB Capital AM and its representatives that forms the basis for plaintiff's claims. VTB Bank proffers evidence, for example, that VTB Capital AM, "in its capacity as the asset manager of the Venture Fund, made [the] investment decision to provide equity financing to [Zao Labs]."[69] The individuals involved in the alleged wrongdoing, moreover, do not appear to be employees of VTB Bank. Plaintiff alleges that it was Andrei Zuzin "of

---

68. Opp. at 1.

69. Plugar Decl., ¶ 8. See also Barantsevich Decl., ¶ 6 ("VTB Bank funded the invested

monies through one of its subsidiaries which I believe was called VTB Asset Management").

VTB Capital AM"[70] who made false representations to him,[71] and who directed him to wire money to the offshore bank accounts of Bigland and Vestax.[72] Plaintiff similarly asserts that he met Zuzin in San Jose, California to discuss a potential investment in the enterprise.[73] Zuzin, however, is not alleged to be a VTB Bank employee. Plaintiff also alleges that Oleg Oleynikov authorized a $250,000 "kickback" to the VTB Group.[74] Oleynikov, like Zuzin, is an employee of VTB Capital AM, not VTB Bank.[75] Finally, Sasha Johnson purportedly "approved the [illicit] wire transfers at a Zao Board of Director meeting."[76] Johnson is an independent consultant who provided consulting services to VTB Capital AM; there is no evidence that she was ever an employee or agent of VTB Bank.[77] Plaintiff himself acknowledges, moreover, that the investment in Zao Labs was made through VTB Capital AM, rather than directly by VTB Bank.[78]

Accordingly, it appears that all of VTB Bank's alleged contacts with the forum are in fact contacts of VTB Capital AM.[79] As discussed, VTB Bank, VTB Capital, Inc., and VTB Capital AM are legally distinct entities. VTB Capital AM has its own board of directors and officers, maintains its own books and records and financial accounts, and has its own offices.[80] Plaintiff does not argue or proffer evidence that VTB Capital AM operates as an agent of VTB Bank, such that its actions can be imputed to VTB Bank.[81] He adduces no evidence, for example, regarding the importance of VTB Capital AM's operations to VTB Bank. Nor does he proffer evidence regarding the level of control VTB Bank exercises over VTB Capital AM's internal operations and daily affairs. There is thus no basis for imputing VTB Capital AM's alleged acts directed toward California to VTB Bank.[82]

70. Complaint, ¶ 15.

71. *Id.*, ¶ 20.

72. *Id.*, ¶ 18; see also Barantsevich Decl., ¶ 8 ("Mr. Zuzin instructed me to report the wire transfers as 'Research and Development Costs'").

73. Barantsevich Decl., ¶ 5.

74. *Id.*, ¶ 25.

75. Plugar Decl., ¶ 5.

76. FAC, ¶ 18.

77. Plugar Decl., ¶ 5.

78. FAC, ¶ 11. At the hearing, plaintiff argued that the investment contract was actually between Zao Labs and VTB Bank. This argument, however, contradicts his amended complaint, which alleges that VTB Bank funds were invested "through VTB Capital AM." (*Id.*) While it is possible that VTB Bank could have contracted with plaintiff to invest funds in Zao Labs using VTB Capital AM as an intermediary, plaintiff neither pleads this or adduces evidence that it is true.

79. There is no evidence regarding any specific contacts VTB Capital, Inc. has with California. Accordingly, even if the court concluded that its presence in the United States could be attributed to VTB Bank, plaintiff has not demonstrated that VTB Capital, Inc. is subject to either general or specific jurisdiction here.

80. Plugar Decl., ¶ 4

81. As noted *supra,* plaintiff's complaint and opposition do not clearly delineate between VTB Capital and VTB Capital AM. Plaintiff alleges that the names are used "interchangeably," apparently asserting that VTB Capital is essentially the New York branch of VTB Capital AM. (FAC, ¶ 4). There is no evidence, however, that VTB Capital, Inc. is in any way linked to the Beau Labs transaction, nor any evidence that it has contacts with California. Plaintiff's allegations concern only the actions of VTB Capital AM.

82. At the hearing, plaintiff argued that he had adduced evidence of VTB Bank's contacts with California. Specifically, he asserted that Mark Rabinovich, Beau Labs' former attorney and a former director of Zao Labs, reported that at least one Zao Labs' board of directors

Plaintiff also does little to argue that VTB Capital AM is an alter ego of VTB Bank. VTB Bank has adduced evidence that it is not involved in the day-to-day operations of its subsidiaries, including VTB Capital AM.[83] Plaintiff has proffered no contradictory evidence, and the court therefore concludes that it cannot attribute the actions of VTB Capital AM and its employees to VTB Bank for purposes of establishing minimum contacts. Putting aside the allegations of wrongdoing by VTB Capital AM employees in connection with the transaction that underlies plaintiff's claims, there is nothing linking VTB Bank either to California or the United States. VTB Bank's investment in VTB Capital AM's venture fund occurred entirely in Russia, and the fund was controlled entirely by VTB Capital AM, the

Russian subsidiary. Because the activities and contacts of VTB Capital AM with California cannot be attributed to VTB Bank, there is no basis upon which to conclude that it aimed an intentional act at the forum, and in this manner purposefully availed itself of the benefits of doing business here. There are no allegations or evidence that VTB Bank invested in the venture fund with the intent that the funds would subsequently be used in California; rather, from the record it appears that VTB Bank had already invested its money in the fund prior to the time plaintiff approached VTB Capital AM, and VTB Capital AM decided to invest the funds in plaintiff's venture.[84]

Consequently, the court concludes that it would not be appropriate to exercise specific jurisdiction over VTB Bank.[85]

---

meeting took place at VTB Bank's headquarters in Moscow. (Declaration of Mark Rabinovich ("Rabinovich Decl."), Docket No. 30 (Mar. 6, 2013), ¶ 2). This fact is insufficient to demonstrate that VTB Bank intentionally aimed an act toward California. There are no allegations that VTB Bank employees or representatives sat in on the meeting, controlled the agenda for the meeting, or in any way influenced the deliberations of the board. There are no allegations and no evidence regarding what transpired at the meeting. Allowing another Russian company to "utilize its conference room," without more, does not demonstrate that VTB Bank expressly aimed its conduct at California. Rather, plaintiff must allege or adduce evidence that VTB Bank engaged in "individualized targeting" of him, e.g., that it allowed Zao Labs to use its conference room intending that the meeting would result in harm to plaintiff in California. See *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, No. C 12–04634 SI, 2012 WL 5471143, *2 (N.D.Cal. Nov. 9, 2012) ("In tort cases in particular, where specific jurisdiction is properly exercised despite the non-resident's absence of physical presence in the forum state, there must be 'individualized targeting,'" quoting *Bancroft & Masters*, 223 F.3d at 1087).

83. Soloviev Decl., ¶ 9.

84. Plaintiff also cites to Rabinovich's declaration, in which he states that he was told by Zuzin and Oleynikov that Beau Labs "would have to meet 'VTB Bank' requirements (often referred to as 'Big Brother's' requirements) in order for VTB [Capital AM] to be permitted to fund the second tranche of the investment." Rabinovich Decl., ¶ 3. The fact that VTB Bank may have imposed requirements on its subsidiary's use of funds, however, does not demonstrate that VTB Bank was itself involved in the loan transaction or that it exercised day-to-day control over VTB Capital AM. Rather, it shows only that VTB Bank may have articulated corporate guidelines for its subsidiaries. This is not sufficient, without more, to demonstrate that VTB Bank was involved in the California venture or controlled the day-to-day internal operations of VTB Capital AM. See *Sonora Diamond Corp.*, 83 Cal.App.4th at 542, 99 Cal.Rptr.2d 824 ("[T]he parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect [have] taken over performance of the subsidiary's day-to-day operations in carrying out that policy").

85. Because the court has concluded that VTB Bank did not purposefully direct its conduct toward California, it need not address the remaining two prongs of the specific jurisdiction test. The court notes, however, that

Plaintiff proffers no evidence of any contacts VTB Bank has with California, and the court thus cannot conclude that it purposefully availed itself of the privilege of doing business here.[86] Although VTB Capital AM may have contacts with the forum, there is no basis for imputing those contacts to VTB Bank. Accordingly, specific jurisdiction is lacking.

## D. Whether the Court Has Jurisdiction under the Federal Long–Arm Statute

 Plaintiff notes, in one sentence in his opposition, that Rule 4(k)(2) of the Federal Rules of Civil Procedure authorizes district courts to exercise jurisdiction over a foreign defendant in certain circumstances. This rule applies "in a narrow band of cases" where "the United States serves as the relevant forum for minimum contacts analysis." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir.2002); Fed.R.Civ.Proc. 4(k)(2) ("If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state"). Rule 4(k)(2) was added to the Federal Rules of Civil Procedure in 1993 to "close a loophole that would otherwise [have] allow[ed] a foreign defendant with sufficient contacts with the United States to evade enforcement of federal law simply because its contacts were spread too thinly across various states to support jurisdiction in any one state." *R. Griggs Group, Ltd. v. Consolidated Shoe, Inc.*, No. C98–4676 FMS, 1999 WL 226211, *2 (N.D.Cal. Apr. 9, 1999); see also Fed.R.Civ.Proc. 4(k)(2), Advisory Committee Notes. A federal court may exercise jurisdiction under Rule 4(k)(2) if (1) plaintiff's cause of action arises under federal law; (2) the defendant is not subject to personal jurisdiction in any state court of general juris-

---

plaintiff has not alleged any harm that VTB Bank caused as a result of its investment in the venture fund. This, of course, is the only contact defendant arguably has with the state. Even if the court were to conclude that VTB Bank intentionally invested funds in a California venture, therefore, plaintiff does not seek actual damages for alleged harm. Rather, it was subsequent actions by Zuzin and other VTB Capital AM employees that allegedly caused plaintiff's purported injuries. Thus, it appears that the third prong of the personal jurisdiction is also not satisfied here.

**86.** At the hearing, plaintiff cited the deposition testimony of Alexandra Johnson, an independent consultant for VTB Capital AM, who sat on the investment committee that approved the decision to invest in plaintiff's venture. Plaintiff asserts that Johnson testified that she sat on the committee with Zuzin and Oleynikov, who were both VTB Bank employees at the time VTB Capital AM decided to invest. Johnson, however, did not so testify. Rather, she stated that Zuzin "was employed by the VTB venture department." (Meyer Decl., Exh. 1 at 24:9). Although Johnson denominated Zuzin's employer a "department," viewed in combination with other evidence in the record that Zuzin was a VTB Capital AM employee, Johnson's testimony most logically implies that Zuzin was an employee of VTB Capital AM, the venture capital arm of the VTB Group. Certainly, the allegation does not imply that Zuzin was a VTB Bank employee, as VTB Bank is not mentioned. Similarly, Johnson does not state that Oleynikov was an employee of VTB Bank. She states only that he was the "most active" member of the investment committee given his technical background and knowledge of software. (*Id.* at 25:21–26:25). The only evidence in the record concerning Oleynikov's position is Plugar's declaration, which states that he is an employee of VTB Capital AM. It therefore appears that Johnson, Zuzin, and Oleynikov were VTB Capital AM representatives. Their conduct during investment committee meetings thus cannot establish VTB Bank's contacts with California.

diction; and (3) the exercise of personal jurisdiction over the defendant would comport with due process. *Glencore Grain Rotterdam*, 284 F.3d at 1126. Plaintiff has asserted two claims under the federal RICO statute, satisfying the first element for the exercise of jurisdiction under the federal long-arm statute. As respects the second prong, the Ninth Circuit has held that the burden is on defendant to adduce evidence that it is not subject to general jurisdiction in any state in the country. In *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 461 (9th Cir.2007), the court concluded:

"Ordinarily, the plaintiff bears the burden of proving personal jurisdiction over the defendant. However, proving the lack of personal jurisdiction in every state could be quite onerous, and it is the defendant, not the plaintiff, that likely possesses most of the information necessary to do so. Accordingly, we join the Fifth, Seventh, and D.C. Circuits in holding that '[a] defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there. ... If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.'" *Id.* (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir.2001)).

The *Holland America Line* court concluded that "absent any statement from [defendant] that it is subject to the courts of general jurisdiction in another state, the second requirement of Rule 4(k)(2) is met." *Id.* at 462. VTB Bank does not state that it is subject to general jurisdiction in another state. Accordingly, the court concludes that the second prong of Rule 4(k)(2) is satisfied.

The third element of Rule 4(k)(2) requires a finding that the exercise of personal jurisdiction comports with due process. This presents a major stumbling block to the exercise of jurisdiction here. "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." *Id.*; see also *Pebble Beach Co.*, 453 F.3d at 1159 ("The due process analysis is identical to the one discussed above when the forum was California, except here the relevant forum is the entire United States"). Plaintiff merely cites Rule 4(k)(2) in his opposition; he fails to proffer any argument or evidence concerning VTB Bank's contacts with the United States beyond his suggestion that VTB Capital AM's contacts may be imputed to it. Plaintiff does not, for example, demonstrate that VTB Bank solicits or conducts business in the United States, or that it in any way targets the United States as a potential market. Plaintiff merely argues that VTB Bank's subsidiaries have contacts in United States and that VTB Bank invested in the venture fund; the court has concluded that these insufficient to support personal jurisdiction.[87]

---

**87.** Plaintiff does note in his opposition that VTB Bank "[a]dvertises throughout the world that it operates in the United States and Europe." (Opp. at 2–3.) The evidence it cites in support of this contention, however, is not in the record. Plaintiff cites to page 322 of exhibit 17 to the Meyer declaration, but that page does not contain any information regarding VTB Bank's advertisements; rather, it appears to be a table of contents for the

Accordingly, the court finds that plaintiff has not met his burden of showing that VTB Bank has sufficient contacts with the United States that the exercise of jurisdiction over it under Rule 4(k)(2) would comport with due process.

### E. Whether Plaintiff Should Be Granted Jurisdictional Discovery

After he filed opposition to VTB Bank's motion, plaintiff filed a separate motion for jurisdictional discovery.[88] VTB Bank filed opposition to this request with its reply.[89]

 District courts have "a significant amount of leeway" in deciding whether to grant plaintiffs leave to conduct jurisdictional discovery while a motion to dismiss is pending. *Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 672 (S.D.Cal.2001). Cf. *Blackburn v. United States*, 100 F.3d 1426, 1436 (9th Cir.1996) ("The district court has wide discretion in controlling discovery"). The Ninth Circuit has adopted a liberal standard with respect to the granting of jurisdictional discovery, however, noting that it "should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Butcher's Union Local No. 498*, 788 F.2d at 540 (quoting *Data Disc, Inc.*, 557 F.2d at 1285 n. 1; *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n. 24 (9th Cir.1977)). Jurisdictional discovery need not be allowed, however, if the request amounts merely to a "fishing expedition." *Johnson v. Mitchell*, No. CIV S–10–1968 GEB GGH PS, 2012 WL 1657643, *7 (E.D.Cal. May 10, 2012) (citation omitted); see also *Mackovich v. U.S. Government*, No. 06–cv–00422–SMS (PC), 2008 WL 2053978, *1 (E.D.Cal. May 13, 2008) (denying discovery where plaintiff made "no showing that if further discovery were allowed, the outcome of the motion to dismiss would be affected," citing *Laub v. United States Dept. of the Interior*, 342 F.3d 1080, 1093 (9th Cir.2003)). A district court may deny jurisdictional discovery "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Pebble Beach Co.*, 453 F.3d at 1160.

 In his request, plaintiff seeks discovery regarding various aspects of VTB Bank's operations. He requests, *inter alia*, discovery concerning the business interests and ventures VTB Bank has in the United States; transaction documents revealing the source of funds invested in Zao and Beau Labs; and operational and formation documents for VTB Bank's subsidiaries.[90] Plaintiff asserts that this information will demonstrate that VTB Bank "controls VTB Capital and VTB [Capital] AM who are actively involved in the United States market and in California;" and that show VTB Bank was involved in the transaction between VTB Capital AM and Zao and Beau Labs.[91] The court concludes

VTB Groups 2011 annual report. (See Meyer Decl., Exh. 17 at 322). The court searched through the remaining pages of exhibit 17 but could not find the evidence cited. Furthermore, one oblique reference to the fact that VTB "operates in the United States," without any additional context, is insufficient to demonstrate purposeful availment.

88. Motion for Jurisdictional Discovery ("Disc. Motion"), Docket No. 32 (March 11, 2013).

89. Opposition to Plaintiff's Motion for Jurisdictional Discovery ("Disc. Opp."), Docket No. 35 (March 18, 2013).

90. Disc. Motion at 2.

91. *Id.*

that granting jurisdiction discovery would not be appropriate.

Plaintiff relies entirely on the argument that the contacts of its subsidiaries are properly attributed to VTB Bank for jurisdictional purposes. As discussed at length, however, plaintiff has failed to adduce any evidence that it would be appropriate to disregard the corporate structure and impute VTB Capital, Inc.'s or VTB Capital AM's contacts to VTB Bank. The evidence VTB Bank proffers concerning the legal separateness of the entities is uncontroverted. Plaintiff, moreover, has adduced *no* evidence that VTB Bank controls the day-to-day operations of its subsidiaries. Because plaintiff has offered nothing but bare allegations that VTB Capital AM and VTB Capital, Inc. are agents or alter egos of VTB Bank, the court concludes that further discovery concerning the corporate structure of the VTB Group would amount to nothing more than a "fishing expedition." See *Martinez v. Manheim Central California*, No. 1:10-cv–01511–SKO, 2011 WL 1466684, *5 (E.D.Cal. Apr. 18, 2011) (denying jurisdictional discovery on an alter ego theory because "plaintiffs' assertion that Cox and Manheim may not be separate entities is entirely speculative. Plaintiffs have not alleged in their complaint or identified in their opposition brief any facts that remotely tend to support this contention.... The Court declines Plaintiffs' invitation to find that discovery is appropriate in the absence of a minimal factual showing supporting personal jurisdiction and, moreover, where no theory has been posited about what facts would be discovered and what they would show if Plaintiffs were permitted to fish on a hunch that something might be caught in a widely-cast net"); *Panterra Networks, Inc. v. Convergence Works, LLC*, No. C–09–1759 RMW, 2009 WL 4049956, *4 (N.D.Cal. Nov. 20, 2009) (denying discovery related to plaintiff's agency theory of jurisdiction in part because "plaintiff has failed to offer any evidence to contradict the evidence submitted by defendants"); compare *Wine Bottle Recycling, LLC v. Niagara Systems LLC*, No. 12–1924 SC, 2013 WL 1120962, *9 (N.D.Cal. Mar. 18, 2013) (granting jurisdictional discovery where "[d]efendants rightly point out that [p]laintiff fails to substantiate its agency or alter ego theories, but [d]efendants do not explicitly deny [p]laintiff's allegations, and the core facts as to the [d]efendants' interrelationships are controverted").

Here, VTB Bank's evidence is uncontroverted. Although plaintiff may believe that further discovery concerning the "operational and formation documents for VTB Bank's subsidiaries" will reveal that VTB Bank is subject to jurisdiction here, he has adduced no evidence showing that this belief is anything more than a hunch. See *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir.2008) ("While it might be jurisdictionally relevant if Hansing or the Boucher Defendants had used eBay to conduct a significant quantity of automobile sales to California residents or in other states, neither Boschetto's complaint nor his affidavit allege that any of the Defendants are engaged in such sales. The denial of Boschetto's request for discovery, which was based on little more than a hunch that it might yield jurisdictionally relevant facts, was not an abuse of discretion"); *Butcher's Union Local No. 498*, 788 F.2d at 540–41 (affirming the district court's denial of jurisdictional discovery because plaintiffs "state only that they 'believe' that discovery will enable them to demonstrate sufficient" contacts, and "speculation does not satisfy" the required showing); *Videx, Inc. v. Micro Enhanced Tech., Inc.*, No. 12–0065, 2012 WL 1597380, *2 (D.Or. May 4, 2012) (denying jurisdictional discovery "[i]n light of [plaintiff's] purely speculative allegations of attenuated jurisdictional contacts"). VTB Bank

has proffered uncontroverted evidence that its subsidiaries are not agents or alter egos; in the face of this evidence, plaintiff has offered nothing but speculation.

Similarly, plaintiff's request for discovery of transaction documents that he hopes will "reveal[ ] the source of funds invested in Zao and Beau Labs" appears to be nothing more than a fishing expedition to uncover evidence that VTB Bank was more involved in the investment decision than the current record indicates. VTB Bank, however, has adduced uncontroverted evidence that VTB Capital AM managed the venture fund that provided money to the software venture. VTB Bank concedes that some of the money in the fund was invested by it; without more, however, this single fact does not show that VTB Bank in any way directed its conduct toward California or the United States. Based on the present record, it is unclear how further discovery concerning the source of funds could develop pertinent facts that would change the court's jurisdictional decision; this is particularly true given uncontroverted evidence in the record that the funds came from the VTB Capital AM venture fund. See *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (upholding the denial of jurisdictional discovery where plaintiffs' allegations of jurisdictional contacts were "purely speculative," and plaintiffs failed to identify any "specific facts, transactions, or conduct" that might support the exercise of personal jurisdiction).

Ultimately, the Ninth Circuit has held that "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the [c]ourt need not permit even limited discovery." *Pebble Beach*, 453 F.3d at 1160. VTB Bank has specifically denied that it controls the operations of its subsidiaries; it has specifically denied that it was involved in the decision to invest in plaintiff's venture; and it has specifically denied that it has any contacts with California. Plaintiff's jurisdictional theories, by contrast, rest only on bare allegations that the VTB Group consists of legally indistinct entities and that VTB Bank was somehow involved in the decision to invest money in California. These bare assertions are unsupported by evidence and too speculative to support a grant of jurisdictional discovery.[92] Because plaintiff has not demonstrated that resolution of the jurisdictional issue should be delayed and VTB Bank forced to incur discovery costs, his request for discovery is denied.

### III. CONCLUSION

For the reasons stated, plaintiff has not demonstrated that the court can exercise personal jurisdiction over VTB Bank or that jurisdictional discovery is warranted. VTB Bank's motion to dismiss is granted.

---

92. Plaintiff does not argue that jurisdictional discovery is needed to show that the court can exercise jurisdiction either under RICO or the federal long-arm statute. The court notes, however; plaintiff's RICO theory is predicated on a finding that VTB Bank is present in the United States through the contacts of its subsidiaries. The court has found this allegation unsupported by the evidence. As respects jurisdiction under the federal long-arm statute, plaintiff has adduced *no* evidence that VTB Bank has any contacts with the United States. Its only alleged contacts are the contacts attributed to VTB Capital AM, which the court has found cannot be attributed to VTB Bank. There is thus nothing in the record to support the conclusion that additional discovery would how VTB Bank has sufficient contacts with the United States to support exercising jurisdiction over it under the federal long-arm statute.